BRUNNER, J.
 

 {¶ 1} Defendant-appellant, Lawrence A. Dibble, appeals an entry of the Franklin County Court of Common Pleas filed on August 16, 2016 which denied his motion to suppress evidence obtained in a search of his house. Because we find that the affidavit submitted for the search warrant did not supply probable cause to search Dibble's house and was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," we reverse. (Citations and internal quotation marks omitted.)
 
 See
 

 United States v. Leon
 
 ,
 
 468 U.S. 897
 
 , 923,
 
 104 S.Ct. 3405
 
 ,
 
 82 L.Ed.2d 677
 
 (1984).
 

 I. FACTS AND PROCEDURAL HISTORY
 

 {¶ 2} On March 29, 2010, a Franklin County Grand Jury indicted Dibble for 20 counts of voyeurism and one count of sexual imposition. (Mar. 29, 2010 Indictment.) The voyeurism counts were based on videotape recovered from Dibble's home which apparently showed girls in their early and mid-teens disrobing in the locker room of the school where Dibble was then a teacher.
 

 Id.
 

 Dibble pled not guilty on March 31. (Mar. 31, 2010 Plea Form.) Shortly thereafter, on May 12, Dibble filed a motion to suppress. (May 12, 2010 Mot. to Suppress.)
 

 {¶ 3} The trial court held a hearing on the motion on June 29, 2010. (June 29, 2010 Hearing Tr., filed Aug. 17, 2010.) At the hearing, the defense introduced four exhibits: the warrant documents, the complaint against Dibble, the arrest information form, and the uniform incident report. (Hearing Exs. 1-4, filed Aug. 17, 2010.) The affidavit in support of the warrant provided the following statement in support of probable cause:
 

 On February 2, 2010 Victim # 1 reported to the Upper Arlington Police Department that while a student at The Wellington School one of her teacher's [sic], Lawrence A Dibble touched her inappropriately. Victim # 1 stated that she was rehearsing line [sic] for a play with Dibble in the school when he asked for a reward for getting his lines correct. He asked to touch Victim # 1's stocking on her leg. Upon touching the stocking Dibble then proceeded to run his hand up Victim # 1's skirt brushing his fingers across her vaginal area. Victim # 1 stated she was shocked and froze as Dibble then ran his hands over her buttocks, and lower abdomen area. Victim # 2 was with Victim # 1 while she made the report. Victim # 2 stated she also had inappropriate contact with Dibble. Victim # 2 stated it was after she had graduated high school where Dibble had also been her teacher. Victim # 2 stated that Dibble had taken photo's [sic] of her nude vaginal area during one of their meetings where inappropriate touching was involved. Victim # 2 told investigators that Dibble used a digital camera to take the photo's [sic], and
 made her wear a pillow case over her head while he took them.
 

 On February 2, 2010 Victim # 1 went to The Wellington School at the direction of the Upper Arlington Police wearing a recording device. She had a conversation with Dibble about the inappropriate touching where he stated "I just wasn't thinking". [sic]
 

 Investigators from Upper Arlington believe Dibble's computers, camera's [sic], media storage devices, etc. may contain correspondence, and photos to substantiate Victim # 1 and Victim # 2's claims.
 

 (Hearing Ex. 1 at 5.)
 

 {¶ 4} Only one witness testified at the hearing, the detective who had sworn out the affidavit for the search warrant, obtained the search warrant, and conducted the search. (Hearing Ex. 1 at 5-6; June 29, 2010 Hearing Tr. at 3-4.) The detective admitted that "Victim # 2," also known as E.K., was legally an adult when the nude photographs were taken and the touching occurred.
 
 Id.
 
 at 18-20. He also admitted that E.K. had told him the contact and photographs were consensual.
 
 Id.
 
 at 35. He admitted that he did not refer to E.K. as a "victim" in any other report he filed in connection with the case and that his uniform incident report stated there was only one victim.
 
 Id.
 
 at 5-9. However, he testified that he felt that E.K. had seemed uncomfortable about her activities with Dibble and still considered her a victim.
 
 Id.
 
 at 15, 35.
 

 {¶ 5} The detective admitted that the information given to him by "Victim # 1," also known as E.S., did not, on its own, provide probable cause to search Dibble's house.
 
 Id.
 
 at 13. That is, E.S.'s report of unwanted physical contact was contact that occurred only at school. (Hearing Ex. 1 at 5.) Allegations regarding photographs taken with a digital camera came only from E.K., who reported that she had consented to the photographs and was an adult when they were taken.
 
 Id.
 

 {¶ 6} The detective testified at the trial court's hearing on Dibble's motion to suppress that, in addition to providing the affidavit, he was sworn in before the municipal court judge issuing the search warrant and then had a discussion with that judge. (June 29, 2010 Hearing Tr. at 33.) No recording or transcript or other form of preservation of the record was made of the hearing before the municipal judge who issued the search warrant concerning Dibble. So the evidence before the trial judge of the common pleas court was primarily that of the sworn testimony of the detective involved in all stages of obtaining and executing the search warrant and an affidavit from the detective sworn in support of the warrant. This detective testified before the common pleas court on the motion to suppress that he told the issuing judge more background about how Dibble had known E.K. and E.S. since seventh grade, and how Dibble took photographs of students in unitards which were somewhat see-through.
 
 Id.
 
 at 33-34.
 

 {¶ 7} On July 1, 2010, the trial court concluded that the evidence must be suppressed. (July 1, 2010 Decision & Entry Granting Suppression.) It found that the detective knowingly and intentionally made false statements in referring to E.K. as a victim in order to obtain a search warrant for Dibble's house.
 
 Id.
 
 at 4-10. The trial court did not perceive that the photographs of E.K. were unlawful and it found that the evidence regarding E.S. did not give probable cause to search Dibble's house.
 
 Id.
 
 at 8. That is, nothing about the fact that Dibble touched E.S. inappropriately at school supported an inference of illegal activity occurring in Dibble's home such that a judicial warrant should have issued to search it.
 
 Id.
 

 {¶ 8} This Court affirmed the trial court's decision on August 4, 2011.
 
 State v. Dibble
 
 ,
 
 195 Ohio App.3d 189
 
 ,
 
 2011-Ohio-3817
 
 ,
 
 959 N.E.2d 540
 
 (10th Dist.).
 

 {¶ 9} The Supreme Court of Ohio reversed our decision on October 10, 2012.
 
 State v. Dibble
 
 ,
 
 133 Ohio St.3d 451
 
 ,
 
 2012-Ohio-4630
 
 ,
 
 979 N.E.2d 247
 
 . The high court found that the trial court's construction of the definition of "victim" was too hypertechnical and narrow.
 
 Id.
 
 at ¶ 20-22. The Supreme Court opined that the detective had merely selected "victim" as a generic term to describe E.K. and E.S. so as to avoid identifying them by name and that the trial court had abused its discretion in finding that the detective had intentionally misled the municipal judge who reviewed the search warrant affidavit.
 
 Id.
 
 at ¶ 22-26.
 

 {¶ 10} On remand, Dibble filed with the trial court a new motion to suppress. (Feb. 4, 2013 Mot. to Suppress.) His counsel argued in the new motion that, although the detective may have had a subjective basis to refer to E.K. as a "victim," Dibble's conduct toward her did not constitute a crime as it was described in the affidavit in support of the warrant.
 
 Id.
 
 at 6. There is no dispute that no probable cause existed to search Dibble's house based on statements concerning E.K. Additionally, the detective had admitted no probable cause existed to search Dibble's house based on Dibble's alleged inappropriate touching of E.S. at school.
 
 Id.
 
 at 6-8.
 

 {¶ 11} The parties thoroughly briefed the matter and the trial court heard oral argument at a new hearing. (Mar. 12, 2013 Hearing Tr., filed Oct. 24, 2013.) The State indicated at the outset that it wanted to call the municipal judge as a witness.
 
 Id.
 
 at 5. But the trial court declined to allow it based on Ohio Rule of Criminal Procedure 41(C)(2), which allows testimony in support of a warrant to be admitted into evidence only "if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit."
 
 Id.
 
 at 5-7. The State did not otherwise seek to present any new evidence and neither did Dibble's counsel in his defense.
 
 Id.
 
 at 3-6. Instead, the parties relied on materials and testimony developed during the original June 2010 suppression hearing.
 
 Id.
 

 {¶ 12} On April 30, 2013, the trial court denied the new motion to suppress. (Apr. 30, 2013 Decision & Entry Denying Suppression.) The trial court found that, based on the affidavit supporting the warrant, there was no probable cause to search Dibble's house.
 
 Id.
 
 at 4-8. However, it found that because the Supreme Court had determined that the trial court had erred in finding that the detective had intentionally misled the municipal judge, it could no longer conclude that the detective had not exercised good-faith reliance on the warrant.
 
 Id.
 
 at 8-9. It also found that the municipal judge who issued the search warrant of Dibble's home did not "wholly abandon[ ] her role."
 
 Id.
 
 at 9. The trial court found that the case did not present a warrant "so inadequate in terms of its particularity of the place to be search[ed] or items to be seized as to" otherwise circumvent the good-faith reliance exception.
 
 Id.
 
 at 9. But, despite quoting the four circumstances in which good-faith reliance on a warrant does
 
 not
 
 excuse a violation of the Fourth Amendment, the trial court did not discuss or consider the third circumstance, where "an officer purports to rely upon a warrant based on an affidavit 'so lacking' in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Apr. 30, 2013 Decision & Entry at 8-9, quoting
 
 State v. George
 
 ,
 
 45 Ohio St.3d 325
 
 , 332-33,
 
 544 N.E.2d 640
 
 (1989), citing
 
 Leon
 
 at 923,
 
 104 S.Ct. 3405
 
 ).
 

 {¶ 13} After the trial court denied Dibble's motion to suppress, on June 11, 2013 Dibble pled "no contest" to each of the
 multiple counts of the indictment. (June 11, 2013 Plea Form; June 11, 2013 Hearing Tr. at 14, filed Oct. 24, 2013.) On August 15, 2013, the trial court held a sentencing hearing and sentenced Dibble to serve 6 months on each of the 17 fifth-degree felony counts of voyeurism, 90 days on each of the three second-degree misdemeanor counts of voyeurism, and 60 days on the single count of sexual imposition. (Aug. 16, 2013 Entry at 2.) The trial court ordered Dibble to serve 8 of the fifth-degree felony 6-month voyeurism terms (Counts 1-5, 7, 9, and 10) consecutively to each other.
 

 Id.
 

 It permitted Dibble to serve all other sentences on all other counts concurrently with each other and the 8 consecutively sentenced fifth-degree felony counts for a total term of imprisonment of 4 years.
 

 Id.
 

 {¶ 14} On December 30, 2014, this Court reversed and remanded.
 
 State v. Dibble
 
 , 10th Dist. No. 13AP-798,
 
 2014-Ohio-5754
 
 ,
 
 2014 WL 7462904
 
 . We determined that the State could have sought leave to appeal the trial court's initial determination post-Supreme Court remand that the affidavit did not supply probable cause, but it did not do so.
 
 Id.
 
 at ¶ 13-14. We concluded that because the State did not elect to appeal the trial court's finding that the affidavit did not supply probable cause, we could not consider that question.
 
 Id.
 
 at ¶ 11-14. We also determined that the trial court should have engaged, but did not, in a further examination of the affidavit to determine whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."
 
 Id.
 
 at ¶ 23. We thus remanded for the trial court to consider that issue.
 
 Id.
 
 at ¶ 23, 29.
 

 {¶ 15} On March 3, 2015, we denied reconsideration and certification of a conflict and, on September 16, 2015, the Supreme Court declined to exercise any further jurisdiction concerning the affidavit and search warrant at issue in Dibble's second motion to suppress.
 
 State v. Dibble
 
 , 10th Dist. No. 13AP-798 (Mar. 3, 2015) (memorandum decision);
 
 State v. Dibble
 
 ,
 
 2014-Ohio-5754
 
 ,
 
 2014 WL 7462904
 
 ,
 
 discretionary appeal not allowed
 
 ,
 
 143 Ohio St.3d 1464
 
 ,
 
 2015-Ohio-3733
 
 ,
 
 37 N.E.3d 1249
 
 .
 

 {¶ 16} On remand, and before a new trial judge, the parties engaged in further briefing and the trial court held two hearings. At the first hearing, on March 10, 2016, each party presented arguments but no new evidence. (Mar. 10, 2016 Hearing Tr., filed Oct. 12, 2016.) At the second hearing, on August 16, 2016, the trial court raised the issue of whether it had been established in prior proceedings that probable cause to search Dibble's house had been lacking. (Aug. 16, 2016 Hearing Tr. at 5, filed Oct. 12, 2016.) The State requested that the trial court limit its decision to the issue of whether the detective had a good-faith basis to rely on the warrant issued by the municipal court judge.
 
 Id.
 
 at 15. At this point, the trial court opined that this Court had "missed the point" of the Supreme Court's 2012 decision.
 
 Id.
 
 at 5;
 
 see also
 

 id.
 
 at 15. The trial court therefore issued a decision and entry later the same day finding that the affidavit did "contain sufficient facts to support a finding of probable cause" because a camera was "used to take illicit photos of the minor victim" and the affidavit disclosed two instances of "deviant behavior" which were "connect[ed]" to the "location specified in the warrant." (Aug. 16, 2016 Decision & Entry at 1-2.) It then concluded, "an affidavit that contains evidence sufficient to support a finding of probable cause is certainly not so lacking in indicia of probable cause as to render official belief in its existence unreasonable."
 
 Id.
 
 at 2.
 

 {¶ 17} Dibble now appeals.
 

 II. ASSIGNMENT OF ERROR
 

 {¶ 18} Dibble raises a single assignment of error for review:
 

 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF HIS DUE PROCESS RIGHTS UNDER THE OHIO AND U.S. CONSTITUTIONS AND RIGHTS PROTECTED UNDER THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE THE AFFIDAVIT AT ISSUE WAS SO LACKING IN INDICIA OF PROBABLE CAUSE AS TO RENDER OFFICIAL BELIEF IN ITS EXISTENCE ENTIRELY UNREASONABLE.
 

 III. DISCUSSION
 

 A. Whether Probable Cause is Law of the Case
 

 {¶ 19} In its April 30, 2013 decision and entry, the trial court denied Dibble's motion to suppress but found that, based on the affidavit supporting the warrant, there was no probable cause to search Dibble's house. (Apr. 30, 2013 Decision & Entry Denying Suppression at 4-8.) We reversed and remanded so that the trial court could fulfill its "obligat[ion] to conduct further examination of the affidavit to determine whether it is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."
 
 Dibble
 
 ,
 
 2014-Ohio-5754
 
 , ¶ 23, 29. However, we also noticed from the record that the State did not seek leave to appeal the trial court's determination that the search warrant was not supported by probable cause.
 
 Id.
 
 at ¶ 11-14.
 

 {¶ 20} In the instant appeal, the State argues that, even though it did not cross-appeal the trial court's April 2013 decision, the absence of probable cause has not been established as law of the case. (State's Brief at 18-23.) The State also argues that, because the trial court declined to address the State's claim that Crim.R. 41(C) is unconstitutional, the trial court did not consider unrecorded oral statements allegedly made by the detective to the issuing municipal judge, and thus, the April 2013 finding on probable cause was solely based on the content of the warrant affidavit.
 
 Id.
 
 at 21-22. In short, even though the State focused its arguments before the trial court on the good-faith exception and not probable cause, the State argues that the trial court was still free to find that probable cause existed based on the full record, including statements allegedly made by the detective to the municipal judge.
 
 Id.
 
 at 21-23. The State argues that we should affirm the trial court in denying Dibble's motion to suppress, based on the affidavit and the statements allegedly made by the detective to the municipal judge and also find that reliance on the warrant was reasonable.
 
 Id.
 
 at 18-24.
 

 {¶ 21} The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels."
 
 Nolan v. Nolan
 
 ,
 
 11 Ohio St.3d 1
 
 , 3,
 
 462 N.E.2d 410
 
 (1984). This Court has also recognized that, "[t]he doctrine of the law of the case is not limited to the explicit determinations of a reviewing court, but also extends to determinations by a trial court that could have been appealed but were abandoned by a failure to do so."
 
 Beagle v. Beagle
 
 , 10th Dist. No. 09AP-353,
 
 2009-Ohio-6570
 
 , ¶ 22,
 
 2009 WL 4809837
 
 , citing
 
 Clymer v. Clymer
 
 , 10th Dist. No. 95APF02-239,
 
 1995 WL 571445
 
 , *3 (Sept. 26, 1995) ;
 
 see accord
 

 Klaus v. Klosterman
 
 , 10th Dist. No. 16AP-273,
 
 2016-Ohio-8349
 
 , ¶ 15,
 
 2016 WL 7427432
 
 . "Absent extraordinary
 circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case."
 
 Nolan
 
 at syllabus.
 

 {¶ 22} While a review of the record does not support that the State voluntarily abandoned its arguments on probable cause, when it did not cross-appeal the trial court's finding that probable cause was lacking, it forfeited the argument for subsequent proceedings in this same matter.
 
 See
 

 Dibble
 
 ,
 
 2014-Ohio-5754
 
 , ¶ 12-14. The State argues that an unappealed ruling of law in a pending case should not create law of the case if the ruling can still be argued to be incorrect. (State's Brief at 21.) We disagree in this case. And in doing so, we consider that we could have noticed plain error in the trial court's finding of no probable cause but we did not.
 
 Dibble
 
 ,
 
 2014-Ohio-5754
 
 , ¶ 11-14, in passim.
 

 {¶ 23} We recognize that the Staff Notes to the 2013 amendments of App.R. 3 provide:
 

 App.R. 3(C)(2) is amended to clarify that a party seeking to defend a judgment on a ground other than that relied on by the trial court need not file a cross-assignment of error to do so; instead, that party may simply raise the arguments in the appellate brief.
 

 App.R. 3, staff notes (July 1, 2013 Amend.) We also recognize that we have considered arguments by a defendant-appellee that were raised in a brief but not raised by cross-appeal.
 
 State v. Pinckney
 
 , 10th Dist. No. 14AP-709,
 
 2015-Ohio-3899
 
 , ¶ 21,
 
 2015 WL 5638096
 
 . But whether we can consider arguments not relied on by the trial court in a criminal motion to suppress in order to affirm the trial court's decision is a different question from whether a party seeking to modify a trial court's order must cross-appeal.
 

 {¶ 24} "A person who intends to defend a judgment or order against an appeal taken by an appellant
 
 and who also seeks to change the judgment or order
 
 * * * shall file a notice of cross appeal within the time allowed by App.R. 4." (Emphasis added.) App.R. 3(C)(1). And we have previously stated in matters of criminal sentencing that when there is a failure to raise a claimed error in a prior appeal, whether by direct or cross-appeal, the claimed error is not subject to review.
 
 State v. Burks
 
 , 10th Dist. No. 07AP-553,
 
 2008-Ohio-2463
 
 , ¶ 44,
 
 2008 WL 2152670
 
 . When the trial court in April 2013 found no probable cause for the search warrant to be issued but found the warrant authorized search to be based on a good-faith exception, the State should have cross-appealed the finding of no probable cause during Dibble's appeal. Since the 30-day deadline to cross-appeal has long expired, the State cannot now effectively argue that the trial court was free to reverse itself and find probable cause after this Court settled other matters concerning the case and no appeal had been made of the lack of probable cause finding. Were we to otherwise permit this, especially in criminal cases, resolution of matters sought to be adjudicated on behalf of the people of Franklin County would lack finality. That the detective and municipal court lacked probable cause to issue the warrant to search Dibble's home is therefore the law of the case.
 

 B. Whether the Detective Acted in Good-Faith Reliance Upon the Warrant
 

 {¶ 25} Despite there being a lack of probable cause in Dibble's case, the State essentially argues that the grounds for the issuance of the search warrant must be considered in determining whether the affidavit upon which the warrant
 was issued was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. (State's Brief at 23-24.) We agree. This goes to the question of a good-faith exception when there is a lack of probable cause. Whether there were "indicia of probable cause" is endemic to the question of whether there was probable cause. It is helpful to consider what evidence was appropriately before the trial court and whether that evidence objectively supported a belief by a person of reasonable caution that contraband or evidence of a crime would be found in Dibble's home.
 
 See
 

 Florida v. Harris
 
 ,
 
 568 U.S. 237
 
 , 243,
 
 133 S.Ct. 1050
 
 ,
 
 185 L.Ed.2d 61
 
 (2013).
 

 1. What Evidence Should Have Been Considered under Crim.R. 41
 

 {¶ 26} The State argues that the trial court should have considered not only the face of the affidavit but also the content of what the detective stated he said to the judge who issued the warrant. (State's Brief at 42-58.) However, Crim.R. 41 provides:
 

 Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress
 
 if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit
 
 .
 

 (Emphasis added.) Crim.R. 41(C)(2). Further, "supplemental testimony taken orally by the judge from an affiant will not be admissible at a hearing to suppress unless that testimony has been recorded by a court reporter or recording equipment, transcribed and made a part of the affidavit. If it is not so recorded and transcribed, it will not be admissible at a hearing on a motion to suppress."
 
 State v. Shepcaro
 
 ,
 
 45 Ohio App.2d 293
 
 , 298,
 
 344 N.E.2d 352
 
 (10th Dist.1975).
 
 [1]
 
 Because the detective's comments were not recorded or transcribed, even though they were reportedly offered under oath to the municipal court judge, they were not admissible in the common pleas court at the hearing on Dibble's motion to suppress evidence to be offered in support of the felony charges against him.
 

 {¶ 27} The State argues that although Crim.R. 41(C) may purport to bar the use of such statements to prove probable cause, such statements should nonetheless be considered on the question of whether or not the detective acted in good-faith reliance on the warrant. (State's Brief at 44-46.) However, Crim.R. 41(C) sets forth what evidence is admissible "at a hearing on a motion to suppress," and both probable cause and good faith are issues
 central to the adjudication of motions to suppress. Crim.R. 41(C)(2) ;
 
 Shepcaro
 
 , at 298,
 
 344 N.E.2d 352
 
 . Thus, testamentary evidence that is beyond the four corners of the affidavit and that is not transcribed and made part of the affidavit, is not admissible in a hearing to determine whether such an affidavit supports a good-faith belief by the officer executing the associated search warrant that the warrant complies with the law and constitutional principles or for any other purpose. We find no basis under Crim.R. 41 or the facts and history of this case to carve out any exception.
 

 {¶ 28} And the seminal case defining the good-faith exception to a bad search warrant,
 
 Leon
 
 makes clear that as a matter of law an officer does not "manifest objective good faith in relying on a warrant based on an
 
 affidavit
 
 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (Emphasis added.)
 
 Leon
 
 at 923,
 
 104 S.Ct. 3405
 
 , quoting
 
 Brown v. Illinois
 
 ,
 
 422 U.S. 590
 
 , 610-11,
 
 95 S.Ct. 2254
 
 ,
 
 45 L.Ed.2d 416
 
 (1975) (Powell, J., concurring in part), citing
 
 Illinois v. Gates
 
 ,
 
 462 U.S. 213
 
 , 263-64,
 
 103 S.Ct. 2317
 
 ,
 
 76 L.Ed.2d 527
 
 (1983) (White, J., concurring in judgment). Most simply,
 
 Leon
 
 itself suggests that for the good-faith exception to apply, the important inquiry is what is in the affidavit that was offered in support of the warrant-not what an officer (long after the search has been executed and evidence obtained) may attempt to recall having said to the issuing judge or magistrate in an off-the-record conversation to achieve the warrant.
 

 {¶ 29} We recognize that other districts have viewed the questions posed here using different analyses:
 
 Compare
 

 State v. Lee
 
 , 1st Dist. No. C-070056,
 
 2008-Ohio-3157
 
 , ¶ 22-28,
 
 2008 WL 2553025
 
 ;
 
 State v. Gales
 
 ,
 
 143 Ohio App.3d 55
 
 , 62-63,
 
 757 N.E.2d 390
 
 (8th Dist.2001) ;
 
 State v. Klosterman
 
 ,
 
 114 Ohio App.3d 327
 
 , 333,
 
 683 N.E.2d 100
 
 (2d Dist.1996) (evidence is limited by Crim.R. 41 )
 
 with
 

 State v. Mays
 
 , 2d Dist. No. 23986,
 
 2011-Ohio-2684
 
 , ¶ 31,
 
 2011 WL 2176172
 
 ;
 
 State v. Landis
 
 , 12th Dist. No. CA2005-10-428,
 
 2006-Ohio-3538
 
 , ¶ 21,
 
 2006 WL 1880495
 
 (evidence is not limited by Crim.R. 41 ). Yet there is generally agreement that,
 

 "[t]he purpose of Crim.R. 41(C) is to protect a defendant's rights against the introduction of oral evidence at a post-seizure hearing on a motion to suppress intended 'to bolster the affidavits that probable cause existed for the issuance of a warrant.' And the requirement that supplemental testimony be 'recorded [and] made a part of the affidavit' serves the additional purpose of removing any concern that a reviewing court will have to guess about the actual statements made to the magistrate [or judge] issuing the warrant."
 

 (Footnotes omitted.)
 
 Lee
 
 at ¶ 26, quoting
 
 State v. Shingles
 
 ,
 
 46 Ohio App.2d 1
 
 , 3,
 
 345 N.E.2d 614
 
 (9th Dist.1974) ; Crim.R. 41(C), citing
 
 State v. Jaschik
 
 ,
 
 85 Ohio App.3d 589
 
 , 594,
 
 620 N.E.2d 883
 
 (11th Dist.1993). We hold that these concerns also apply to the question of whether an affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.
 

 {¶ 30} Thus Crim.R. 41(C)(2) prohibits admitting statements made on all issues that may be addressed in "hearing[s] on [ ] motion[s] to suppress," even when made under oath to the issuing judge or magistrate if they are not also "taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit." Crim.R. 41(C)(2). This limitation applies to the use of such evidence including on the question of whether an affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.
 

 Id.
 

 2. Constitutionality of Crim.R. 41
 

 {¶ 31} The State argues that, even if it would apply, Ohio Rule of Criminal Procedure 41(C) is unconstitutional because, although the Fourth Amendment only requires an "oath or affirmation" to support a warrant, Crim.R. 41(C) purports to also require that the oath or affirmation be "transcribed, and made part of the affidavit." (State's Brief at 46-57.) However the Fourth Amendment sets forth "[t]he right of the people," not the rights of the State. Fourth Amendment to the U.S. Constitution. The State can neither assert nor defend its position under the rubric of the Fourth Amendment, since it has no Constitutional rights under the Fourth Amendment that can be violated.
 

 {¶ 32} It should be emphasized that the Fourth Amendment establishes a floor, not a ceiling.
 
 Arnold v. Cleveland
 
 ,
 
 67 Ohio St.3d 35
 
 ,
 
 616 N.E.2d 163
 
 (1993), paragraph one of the syllabus. That is, state governments may freely pass laws and promulgate rules without offending the Constitution that make it
 
 more
 
 onerous for the State to search and seize persons and property. State governments are only forbidden from passing laws or promulgating rules that would diminish the constitutionally protected "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Fourth Amendment to the U.S. Constitution.
 

 {¶ 33} The State further argues that, even if Crim.R. 41(C) does not offend the United States Constitution, the Supreme Court of Ohio has exceeded its power in promulgating the rule because it is substantive, rather than procedural. (State's Brief at 50-53.) The State points out the Ohio Constitution requires that, "[t]he supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right." Ohio Constitution, Article IV, Section 5 (B). The Supreme Court of Ohio has applied this state constitutional provision, holding that "[r]ules promulgated pursuant to this constitutional provision must be procedural in nature."
 
 State v. Slatter
 
 ,
 
 66 Ohio St.2d 452
 
 , 454,
 
 423 N.E.2d 100
 
 (1981).
 

 {¶ 34} Yet there is nothing to draw from in criminal or Constitutional law for a finding that the provision of Crim.R. 41 at issue in this case abridges, enlarges, or modifies any substantive right. The provision of Crim.R. 41(C)(2) at issue in this case regards what evidence "shall be admissible at a hearing on a motion to suppress." Crim.R. 41(C)(2). This procedural provision does not purport to alter the Fourth Amendment, nor does it not change the definition of probable cause, nor does it alter the requirements for obtaining a warrant, nor does it "abridge, enlarge, or modify" any other part of the right of citizens to be free from unlawful search and seizure. Ohio Constitution, Article IV, Section 5 (B). Rather, this provision of the rule finds to be inherently unreliable, evidence introduced in a suppression hearing that was not preserved in the record when the warrant was sought. This provision of the rules is procedural. It is analogous to a rule of evidence, and rules of evidence are generally considered procedural within the limits of Article IV, Section 5(B) of the Ohio Constitution.
 
 See
 

 State ex rel. Ohio Academy of Trial Lawyers v. Sheward
 
 ,
 
 86 Ohio St.3d 451
 
 , 491,
 
 715 N.E.2d 1062
 
 (1999) ;
 
 State v. French
 
 ,
 
 72 Ohio St.3d 446
 
 , 450,
 
 650 N.E.2d 887
 
 (1995).
 

 {¶ 35} In reviewing whether the fruits of the search of Dibble's home can be used as evidence against him in a criminal proceeding, there is no basis in the law or under the Constitution to consider
 statements made by the detective to the municipal judge issuing the search warrant that were not preserved in the record.
 

 3. Whether the Warrant Affidavit was So Lacking in Indicia of Probable Cause as to Render Official Belief in its Existence Unreasonable
 

 {¶ 36} "[P]robable cause to conduct a search [exists] when 'the facts available to [the searcher] would "warrant a [person] of reasonable caution in the belief" ' that contraband or evidence of a crime is present."
 
 Harris
 
 at 243,
 
 133 S.Ct. 1050
 
 , quoting
 
 Texas v. Brown
 
 ,
 
 460 U.S. 730
 
 , 742,
 
 103 S.Ct. 1535
 
 ,
 
 75 L.Ed.2d 502
 
 (1983) (plurality opinion);
 
 Carroll v. United States
 
 ,
 
 267 U.S. 132
 
 , 162,
 
 45 S.Ct. 280
 
 ,
 
 69 L.Ed. 543
 
 (1925), citing
 
 Safford Unified School Dist. # 1 v. Redding
 
 ,
 
 557 U.S. 364
 
 , 370-71,
 
 129 S.Ct. 2633
 
 ,
 
 174 L.Ed.2d 354
 
 (2009).
 

 {¶ 37} In this case, the search warrant affidavit provided information about Dibble's activities with two women. (Hearing Ex. 1 at 5.) One woman, E.K., was known to the detective to have been over the age of consent.
 
 Dibble
 
 ,
 
 2012-Ohio-4630
 
 , ¶ 19,
 
 133 Ohio St.3d 451
 
 ,
 
 979 N.E.2d 247
 
 (noting that the affidavit "stated clearly that Victim # 2 (E.K.) had graduated before the 'inappropriate' touching began"). E.K. reported that Dibble had touched her and taken photographs of her nude vaginal area, but nothing in the affidavit states that in taking these actions Dibble violated criminal statutes. (Hearing Ex. 1 at 5.) This does not tend toward a finding of probable cause to search Dibble's house.
 

 {¶ 38} With respect to the student, E.S.
 
 [2]
 
 , the detective's affidavit reports that Dibble ran his hands over her clothed buttocks and vaginal area at school.
 

 Id.
 

 Though the affidavit does not explicitly say so, a fair reading of the affidavit is that this sexual contact was offensive to E.S. Thus, the affidavit does fairly describe the crime of sexual imposition against E.S., an alleged violation of R.C. 2907.06(A)(1). As such, the detective's affidavit was sufficient to establish probable cause to arrest Dibble, because it provided information that would warrant a prudent person's belief that he had committed the crime of sexual imposition.
 
 See
 

 Miller v. Sanilac Cty.
 
 ,
 
 606 F.3d 240
 
 , 248 (6th Cir.2010), quoting
 
 Henry v. United States
 
 ,
 
 361 U.S. 98
 
 , 102,
 
 80 S.Ct. 168
 
 ,
 
 4 L.Ed.2d 134
 
 (1959) ("An officer has probable cause when 'the facts and circumstances known to the officer warrant a prudent [person] in believing that an offense has been committed.' "). However, the affidavit did not establish probable cause to believe that evidence of any crime was likely to be found at Dibble's home. As the United States Supreme Court stated, "[j]ust as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase."
 
 United States v. Ross
 
 ,
 
 456 U.S. 798
 
 , 824,
 
 102 S.Ct. 2157
 
 ,
 
 72 L.Ed.2d 572
 
 (1982). Applying this maxim, probable cause to believe that Dibble offensively touched E.S. at school will not support a warrant to search Dibble's home.
 

 {¶ 39} The detective's affidavit in support of the search warrant that was issued to search Dibble's home described
 two things: first, a sexual course of conduct with one adult woman (E.K.) involving photographs taken with a digital camera that did not indicate a crime, and second, offensive sexual contact while clothed with a student (E.S.) at a school (who later proved to be of legal age). No reasonable law enforcement officer could think that these two pieces of information, separately or together, would suggest a warranted belief that there was probable cause to search Dibble's home. While Dibble used a digital camera with E.K., which could support the inference that downloading photos from the camera would have to occur on a computer, likely located at his home, his photographic conduct was not a crime. And while Dibble allegedly committed a crime while at school when he offensively touched E.S., there is no evidence in the warrant that he took photographs of her. In short, no events, legal or illegal, described in the detective's affidavit occurred at Dibble's home, and his alleged, illegal touching of E.S. did not result in any physical evidence that reasonably could be believed to be stored at his home. We do not find any manifestation of "objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Internal quotation marks omitted.)
 
 Leon
 
 at 923,
 
 104 S.Ct. 3405
 
 .
 

 IV. CONCLUSION
 

 {¶ 40} The affidavit the police relied on to search Dibble's house provided information about consensual nude photographs Dibble took of one young adult woman who graduated from the school where he was employed as a teacher. It also provided information that Dibble offensively touched another young woman at school without her consent. Photographs consensually taken by Dibble of an adult female whom he met through teaching at the school she graduated from, though likely to be found at Dibble's house, were not evidence of a crime. An affidavit that describes criminal offensive touching of another woman, a student at the school where Dibble taught, but describes no further activity involving Dibble's home does not support the search of his house. As such, the affidavit objectively produces no set of facts that a reasonable law enforcement officer could in good faith rely on to search a house. There being no probable cause for the issuance of the warrant, we hold that the good-faith exception of
 
 Leon
 
 does not apply. Objectively, the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (Internal quotation marks omitted.)
 
 Leon
 
 at 923,
 
 104 S.Ct. 3405
 
 . Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas and order judgment entered on the motion to suppress in favor of Dibble.
 

 Judgment reversed
 
 .
 

 TYACK, P.J., concurs.
 

 SADLER, J., dissents.
 

 The dissent in this appeal questions the majority decision's reliance on
 
 Shepcaro
 
 , noting that the case was decided before the United States Supreme Court created the good-faith exception in
 
 Leon
 
 . Determinations of whether a search warrant is valid as executed and whether a good-faith exception applies are separate steps in a comprehensive analysis of whether evidence obtained via a law enforcement search should be suppressed. Our prior holding in
 
 Shepcaro
 
 serves as a longstanding guide for determining what evidence is admissible in a Crim.R. 41 suppression hearing, which as applied to the facts of this case, first requires a determination of whether or not a search warrant is valid or valid as executed. Under the later decided
 
 Leon
 
 and its progeny, the good-faith exception to execution of an invalid search warrant occurs
 
 after
 
 an analysis is performed under Crim.R. 41, which by its terms defines what quality of evidence is admissible. We find no basis in the law for applying an evidentiary standard to support a good-faith exception that is different from or less restrictive or reliable than what evidence is required to determine the validity of a search warrant.
 

 Although the affidavit did not address it, E.S. later disclosed that she was over 18 when Dibble touched her at school, and she was legally an adult at the time it occurred. (Aug. 15, 2013 Sentencing Tr. at 16, filed Oct. 24, 2013.)