[Cite as *State v. Hinerman*, 2019-Ohio-15.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. John W. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2018AP070030 |
| KATIE L. HINERMAN | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Tuscarawas County Court of Common Pleas, Case No. 2017CR 12 0309

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     January 2, 2019

APPEARANCES:

For Plaintiff-Appellant

MICHAEL J. ERNEST
Assistant Prosecutor
125 East High Avenue
New Philadelphia, OH 44663

For Defendant-Appellee

MARK PERLAKY
Assistant Public Defender
153 North Broadway
New Philadelphia, OH 44663

*Gwin, J.,*

{¶1} Plaintiff-appellant the State of Ohio appeals the July 23, 2018 Judgment Entry of the Tuscarawas County Court of Common Pleas granting defendant-appellee Katie L. Hinerman's ["Hinerman"] motion to suppress evidence.

*Facts and Procedural History*

{¶2} Hinerman was indicted for one count of Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and 2925.11(C)(1)(a). Following Hinerman's arraignment, she filed a Motion to Suppress Evidence on March 7, 2018. Hinerman's motion alleged the arresting officers had no lawful right to search her purse.

{¶3} On April 12, 2018, an evidentiary hearing was held on the motion to suppress. At this hearing, the state presented the testimony of the investigation officer, Michael Covington of the Dover Police Department, along with video recordings from Officer Covington's cruiser camera and a recording by the canine officer's cruiser camera.

{¶4} In the case at bar, the evidence establishes Officer Michael Covington performed a traffic stop on a motor vehicle on Rausch Court in Dover, Ohio due to a vehicle operating without taillights. Hinerman was a passenger in the car. Officer Covington testified that Hinerman proceeded to exit the vehicle as soon as it came to a stop. Officer Covington testified that he ordered Hinerman to stay in the vehicle and he then proceeded to approach the vehicle. Covington advised the driver of the reason for the stop, collected identifications from both the driver and Hinerman, and at the time, Hinerman indicated that she might have had a warrant for her arrest for an income tax violation, but that she had taken care of it.

{¶5} Officer Covington stated that he then returned to his patrol car and advised that he detected an odor of marijuana in the vehicle and that he needed a canine to

respond to the scene. Officer Covington testified that after making the request for the canine, he then proceeded to do a background check on Hinerman as well as the driver. Officer Covington stated that he notified the Dover dispatcher with both identifications and was advised that Hinerman had a valid warrant that was attached to her file. Officer Covington testified that based on this information, he returned to the vehicle where Hinerman stated that she believed she had taken care of it. Officer Covington testified that Captain Matt Russell then obtained a hard copy of the warrant and brought it to the scene.

{¶6}    The cruiser video contains no audio track. Hinerman can clearly be seen exiting the passenger side of the car clutching a purse, which is strapped to her right shoulder. Near the back right bumper of the car, Hinerman turns toward the vehicle and places her purse on the car. She is then handcuffed. An officer can be seen removing the purse from the outside of the vehicle and closing the passenger-side door. The officer carries the purse out of the view of the camera.

{¶7}    The driver was removed from the vehicle, and a narcotics-sniffing canine was subsequently walked around the vehicle. After a walk-around by the canine, the canine alerted and the car was searched. Officer Covington testified that he was part of the search and that suspected marijuana was located in the vehicle. Officer Covington stated that some of the suspected marijuana was located on the driver's side and some was located on the floorboard of the vehicle.

{¶8}    A search of Hinerman's purse revealed a suspected controlled substance. The substance was sent to BCI as part of the investigation, and was determined to be a controlled substance that is commonly referred to as "Spice."

{¶9}   Near the end of the video of the traffic stop, the driver can be seen returning to the car and, after receiving paperwork from an officer, the car is driven away.

{¶10}  Officer Covington testified that he believed it was the next day that he received a copy of an order in the mail from the New Philadelphia Municipal Court that cancelled Hinerman's warrant.  Officer Covington provide the document that he received to the court as Exhibit A. Officer Covington stated that it was through this document that he first discovered that Hinerman's warrant had been cancelled by the New Philadelphia Municipal Court.  The document contains a file-stamp from the New Philadelphia Municipal Court indicating that it had been filed with the court on April 18, 2017.

{¶11}  Following the hearing, the Court issued a Judgment Entry on April 13, 2018 taking the evidence under advisement, deferring a decision, and setting forth a briefing schedule for legal memorandum to be filed on behalf of the parties.  Thereafter, an additional hearing was scheduled for June 26, 2018 for the purpose of allowing the court to consider the legal positions of the state and  Hinerman in light of the Supreme Court of Ohio's decision in *State v. Banks-Harvey*, 152 Ohio St.3d 368, 2018- Ohio-201, 96 N.E.3d 262.

{¶12}  Following this hearing, the court once again deferred the decision on the motion to suppress and ordered additional "supplemental legal memoranda" be filed by both of the parties concerning the applicability of the *Banks-Harvey* decision.  After consideration of all post-hearing memoranda and supplemental legal memoranda, on July 23, 2018 the court issued a Judgment Entry granting Appellee's Motion to Suppress Evidence.

*Assignments of Error*

**{¶13}** The state raises three assignments of error,

**{¶14}** "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS LAW ENFORCEMENT OFFICERS WERE PERMITTED TO SEARCH THE APPELLEE'S PURSE BASED UPON THE GOOD FAITH EXCEPTION AND SEARCH INCIDENT TO ARREST.

**{¶15}** "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE BASED UPON THE DECISION OF *OHIO V. BANKS-HARVEY*, 152 OHIO ST.3D 368, 2018- OHIO-201.

**{¶16}** "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING THE APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS LAW ENFORCEMENT OFFICERS WERE PERMITTED TO SEARCH THE APPELLEE'S PURSE BASED UPON INEVITABLE DISCOVERY RULE."

*Law and Analysis*

**State's right to appeal.**

**{¶17}** A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only where the state has complied with Crim.R. 12(K). *State v. Perez,* 1st Dist. Hamilton Nos. C-040363, C-040364, C-040365, 2005-Ohio-1326, ¶12, *citing State v. Buckingham*, 62 Ohio St.2d 14, 402 N.E.2d 536(1980), syllabus (interpreting former Crim.R. 12(J)).

**{¶18}** Crim.R. 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion.

* * *

**{¶19}** Our review of the record reveals a certifying statement timely filed by the prosecutor as outlined in Crim.R. 12(K). We therefore have jurisdiction to proceed to the merits of this appeal.

**STANDARD OF APPELLATE REVIEW.**

**{¶20}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists

to support those findings.  See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996).  However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard.  See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996).  That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers."  *Ornelas*, supra at 698, 116 S.Ct. at 1663.

I., II, & III.

## ISSUES FOR APPEAL.

**{¶21}**  Each of the state's assignments of error concern the officer's authority to arrest Hinerman and to search Hinerman's purse.

*A. Whether the invalid arrest warrant mandates exclusion of the evidence recovered from Hinerman's purse.*

**{¶22}**  The state contends the trial court erred in concluding that the search results are not admissible because the warrant for her arrest had been recalled weeks before the traffic stop.

**{¶23}**  When a reviewing court determines that a warrant should not have been issued, it must then determine whether the good-faith exception applies, and that question

is a question of law, subject to de novo review by the appellate court. *United States v. Leary*, 846 F.2d 592, 606 (10th Cir.1988).

**{¶24}** Generally, the exclusionary rules states evidence obtained from illegal searches and seizures is inadmissible in court. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶25}** The United States Supreme Court officially recognized the existence of a good faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677(1984); *State v. Wilmoth*, 22 Ohio St.3d 251, 259, 490 N.E.2d 1236(1986). In *State v. Wilmoth* the Ohio Supreme Court followed *Leon* and applied the rule,

> 1. The exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. (*United States v. Leon* [1984], 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, followed.)

*State v. Wilmoth* at paragraph one of syllabus.

**{¶26}** "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring v. United States,* 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

**{¶27}** "The good-faith exception to the exclusionary rule provides that the exclusionary rule should not be applied to bar use of evidence obtained by officers acting in an objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but found to be unsupported by probable cause." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.2d 993, ¶ 29.

**{¶28}** Two Supreme Court decisions closely mirror the facts of the case at bar, *Herring v. United States,* 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), and *Arizona v. Evans*, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).

**{¶29}** In *Herring*, the issue was whether the good-faith exception applied when officers had mistakenly relied on a warrant even though it had been earlier recalled. This issue arose when a clerk mistakenly told a law enforcement officer that an arrest warrant had been issued for a named individual. 555 U.S. at 137, 129 S.Ct. 695. With this information, the officer arrested the individual. Id. The arrest led the officer to search the individual, finding methamphetamine in his pocket. Id.

**{¶30}** The clerk's error was eventually discovered, and the government argued that evidence of the methamphetamine was admissible even though the officer was relying on the existence of a warrant that had been recalled months earlier. Id. at 138, 129 S.Ct. 695. The Supreme Court agreed, explaining that improperly obtained evidence is ordinarily excluded only to deter official misconduct, and here there was nothing to deter because the officer was acting based on the clerk's record-keeping error. Id. at 144-48, 129 S.Ct. 695. As a result, the Supreme Court applied the good-faith exception even though the warrant had no longer existed at the time of the search. Id. at 147-48, 129 S.Ct. 695.

**{¶31}** *Arizona v. Evans* was similar. There too a law enforcement officer arrested an individual based on computerized information showing an outstanding arrest warrant. 514 U.S. at 4, 115 S.Ct. 1185. The arrest led to a search, which revealed marijuana in the individual's possession. Id. Authorities later learned that the computerized entry was a mistake, as the prior arrest warrant had been quashed. Id. Even though the warrant had been quashed, the Supreme Court held that the evidence was admissible because the arresting officer had reasonably relied on the computerized entry showing an outstanding warrant. Id. at 11-16, 115 S.Ct. 1185.

**{¶32}** In *Herring* and *Evans*, the absence of a valid arrest warrant did not preclude application of the good-faith exception because there was no misconduct to deter. *Herring*, 555 U.S. at 147-48, 129 S.Ct. 695; *Evans*, 514 U.S. at 15-16, 115 S.Ct. 1185. Here too there was nothing to deter because the officers had made an arrest based upon a warrant listed in the database. In the case at bar, Captain Russell went to the station and returned to the scene of the traffic stop with a hard copy of the warrant for Hinerman's arrest. (T. at 9-10). Officer Covington testified, "Everything was showing that she did have an active warrant." (T. at 10). The officers were not required to take Hinerman at her word.

**{¶33}** In *Evans* the Court observed,

> If court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction. First, as we noted in *Leon*, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. *See Leon, supra*, 468

U.S., at 916, 104 S.Ct. at 3417; *see also Krull, supra*, 480 U.S., at 350, 107 S.Ct. at 1167.  Second, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.  *See Leon, supra*, 468 U.S., at 916, 104 S.Ct. 3417, and n. 14; *see also Krull, supra,* 480 U.S., at 350–351, 107 S.Ct. at 1167–1168.  To the contrary, the Chief Clerk of the Justice Court testified at the suppression hearing that this type of error occurred once every three or four years.  App. 37.

Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed.  Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, *see Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), they have no stake in the outcome of particular criminal prosecutions.  *Cf. Leon, supra*, 468 U.S., at 917, 104 S.Ct. at 3417–3418; *Krull, supra*, 480 U.S., at 352, 107 S.Ct. at 1168.  The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.  *Cf. Leon, supra*, 468 U.S., at 917, 104 S.Ct. at 3417–3418*; Krull, supra,* 480 U.S., at 352, 107 S.Ct. at 1168.

If it were indeed a court clerk who was responsible for the erroneous entry on the police computer, application of the exclusionary rule also could not be expected to alter the behavior of the arresting officer. As the trial court in this case stated: "I think the police officer [was] bound to arrest. I think he would [have been] derelict in his duty if he failed to arrest." App. 51. *Cf. Leon, supra*, 468 U.S., at 920, 104 S.Ct., at 3419 ("'Excluding the evidence can in no way affect [the officer's] future conduct unless it is to make him less willing to do his duty.'" *quoting Stone*, 428 U.S., at 540, 96 S.Ct., at 3073 (White, J., dissenting)). The Chief Clerk of the Justice Court testified that this type of error occurred "on[c]e every three or four years." App. 37. In fact, once the court clerks discovered the error, they immediately corrected it, Id., at 30, and then proceeded to search their files to make sure that no similar mistakes had occurred, Id., at 37. There is no indication that the arresting officer was not acting objectively reasonable when he relied upon the police computer record. Application of the *Leon* framework supports a categorical exception to the exclusionary rule for clerical errors of court employees. *See Leon, supra*, 468 U.S., at 916–922, 104 S.Ct. at 3417–3420; *Sheppard, supra*, 468 U.S., at 990–991, 104 S.Ct. at 3428–3429.

*Arizona v. Evans*, 514 U.S. 1, 14-16, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). However, this does not give the police a blanket-exception for faulty record keeping,

If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for

future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation. We said as much in *Leon*, explaining that an officer could not "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Id., at 923, n. 24, 104 S.Ct. 3405 (*citing Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)). Petitioner's fears that our decision will cause police departments to deliberately keep their officers ignorant, Brief for Petitioner 37–39, are thus unfounded.

* * *

In a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system. *See Evans*, 514 U.S., at 17, 115 S.Ct. 1185 (O'Connor, J., concurring) ("Surely it would not be reasonable for the police to rely ... on a recordkeeping system ... that routinely leads to false arrests" (second emphasis added)); *Hudson*, 547 U.S., at 604, 126 S.Ct. 2159 (KENNEDY, J., concurring in part and concurring in judgment) ("If a widespread pattern of violations were shown ... there would be reason for grave concern" (emphasis added)).

*Herring v. United States,* 555 U.S. 135, 146-147, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).

**{¶34}** There is no evidence in the case at bar that errors in Dover police, dispatch or court's systems are routine or widespread. "Exclusion of any evidence in this case would not serve the purpose of the exclusionary rule," because there was no police

misconduct. *See State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 97, *quoting Michigan v. Tucker,* 417 U.S. 433, 447, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974) ("The exclusionary rule should not be applied when 'the official action was pursued in complete good faith' because it would have no deterrent effect"). The failure of police in this case to update their database was a simple act of negligence, but not such an error as to render the arrest illegal. The officers who arrested Hinerman had an honest, legitimate belief that a valid arrest warrant existed. *See, State v. Forrest,* 10th Dist. Franklin No. 11AP-291, 2011-Ohio-6234, ¶17.

### B. Whether the Officers could lawfully search Hinerman's purse.

**{¶35}** In *State v. Banks-Harvey,* the defendant was stopped for speeding and removed to the police car. The officer was informed that there was an outstanding arrest warrant for the defendant. The defendant's boyfriend, the owner of the car, and another woman were in the car she had been driving. The owner was not arrested. The trooper then entered the vehicle, retrieved appellant's purse, placed it on the hood of his cruiser, and searched it. The trooper found drugs and drug paraphernalia.

**{¶36}** "The trial court rejected each of the three rationales the state put forth to justify the warrantless search of appellant's purse. The court held that under *Arizona v. Gant,* 556 U.S. 332, 351, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), the search of appellant's purse was not a lawful search incident to arrest. The court found that the trooper retrieved and searched the purse after he had handcuffed and secured appellant in his vehicle and so she was not within reach of her purse when he retrieved and searched it." *Banks-Harvey*, ¶7.

**{¶37}** The trial court rejected the plain-view exception, under *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), as a justification to the search of appellant's purse, because there was no testimony to suggest that appellant's purse possessed an incriminating character that was immediately apparent. And the trial court rejected the state's argument that this was a valid inventory search under *South Dakota v. Opperman*, 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), because the car that contained appellant's purse was not impounded. *Banks-Harvey*, ¶8. However, the trial court concluded "that regardless of the fact that the trooper did not have probable cause to search the vehicle at the time he searched appellant's purse, the officer had probable cause to search the car based on his observation of the capsule in the car and the suspicious behavior of the occupants. Thus, the court held, the contraband in appellant's purse would inevitably have been discovered in the search of the vehicle. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)." *Banks-Harvey, ¶9.*

**{¶38}** The Ohio Supreme Court accepted appellant's appeal on the following proposition of law:

> Because the mere adoption of a policy by the Highway Patrol to retrieve and inventory the belongings of an arrested person cannot authorize unconstitutional police action, the warrantless entry into a car to retrieve the purse of an already-arrested person and the subsequent warrantless removal and search of that purse violates the Fourth Amendment and Section 14, Article I of the Ohio Constitution

*Banks-Harvey, ¶13.*

**{¶39}** The Ohio Supreme Court reversed the decision denying the motion to suppress. The Ohio Supreme Court held that the seizure was not lawful because the policy violated the Fourth Amendment where the defendant's effects are safe and do not need to be stored while the defendant is in custody. Since the seizure was illegal, the inventory search was also illegal. *Banks-Harvey, ¶22.*

**{¶40}** Of importance to the case at bar, is the following observation made by the Court,

> We do not question the objective reasonableness of a policy that requires a trooper to transport with an arrestee any personal property, including a purse that is on the arrestee's person at the time of the arrest. *But appellant's purse was not on her person; it was in the vehicle.* The trooper testified that he relied on standard Highway Patrol procedure to retrieve the purse from the vehicle. Even so, such a policy is insufficient to justify an objectively unreasonable intrusion *into a place protected by the Fourth Amendment.*

*Banks-Harvey, ¶38.*

**{¶41}** The Ohio Supreme Court has previously upheld the search of a purse that a woman was carrying *at the time of her arrest. State v. Mathews*, 46 Ohio St.2d 72, 76, 346 N.E.2d 151(1976). In *Mathews*, the detective retrieved the purse from the woman upon arresting her, set the purse on a nearby table and searched its contents. Id. at 73. The court concluded that the search was valid as incident to her lawful arrest. Id. at 76. In *Matthews*, the Court stated,

Applying the *Robinson* decision [414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427(1973)] to the present case, it is apparent that, if appellee Wanda Mathews' arrest was lawful, then the search of the purse clutched under her arm, and under her immediate control, was not unreasonable.

46 Ohio St. 2d at 75, 346 N.E.2d 151. This continues to be the law,

Searches may also extend to the personal effects of an arrestee. We have held that the search of a purse is reasonable under the Fourth Amendment in certain circumstances, *State v. Mathews* (1976), 46 Ohio St.2d 72, 75 O.O.2d 150, 346 N.E.2d 151, and the United States Supreme Court has held that it is reasonable for police to search any container or article on a defendant's person—including a shoulder bag—in accordance with established inventory procedures. *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65.

*State v. Smith,* 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶13.

**{¶42}** In the case at bar, Hinerman's purse was not inside the vehicle. Further, the officer did not enter the car and retrieve the purse. Hinerman got out of the car clutching the purse that is attached to her by the shoulder strap. *Banks-Harvey* would reach the same result under the facts of the case at bar,

We note that had the trooper obtained the purse in a legal way, such as retrieving it from the car at appellant's request, we would have been compelled to reach a different result. *Likewise, if appellant had been arrested on the street with her purse on her person, we would have been compelled to reach a different result.* But a law-enforcement policy that an

arrestee's personal effects go with them to jail, does not, by itself, authorize an officer *to retrieve the arrestee's personal effects from a place that is protected under the Fourth Amendment.*

*Banks-Harvey at ¶24 (emphasis added).*

**{¶43}** Accordingly, because the purse was voluntarily brought outside the car by Hinerman who was then placed under arrest, we find the search of Hinerman's purse was pursuant to her arrest.

**{¶44}** In the alternative, we note that Hinerman voluntarily brought the purse with her when she got out of the car. Hinerman was arrested while outside the car. The driver and the car left the scene; therefore, the purse would by necessity be transported to the jail with Hinerman where it would be inventoried during Hinerman's booking processes. *Banks-Harvey at ¶21.* Thus, the drugs would have been inevitably discovered. *State v. Perkins,* 18 Ohio St.3d 193, 196, 480 N.E.2d 763(1985).

**{¶45}** The state's First, Second and Third assignments of error are sustained.

{¶46} The judgment of the Tuscarawas County Court of Common Pleas is reversed and this case is remanded to that court for further proceedings in accordance with our opinion and the law.


By Gwin, J.,

Wise, John, J., and

Wise, Earle, J., concur