[Cite as *State v. Remy*, 2025-Ohio-1137.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No.  24CA702 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Jeffery Lee Remy, | : | **RELEASED 3/27/2025** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

Kathleen Evans, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, Ohio, for appellant.

William L. Archer, Jr., Vinton County Prosecuting Attorney, McArthur, Ohio, for appellee.
_____
Hess, J.

{¶1}   Jeffery Lee Remy appeals from a judgment of the Vinton County Common Pleas Court convicting him, following no contest pleas, of two counts of aggravated possession of drugs, one count of tampering with drugs, and two counts of possession of drugs.  Remy presents one assignment of error asserting that the trial court erred when it failed to suppress evidence found during an illegal search incident to arrest based on a revoked arrest warrant.  For the reasons which follow, we overrule the assignment of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶2}  In September 2021, Remy was indicted on five counts:  (1) Count One, aggravated possession of drugs, a third-degree felony; (2) Count Two, tampering with drugs, a third-degree felony; (3) Count Three, aggravated possession of drugs, a fifth-degree felony; (4) Count Four, possession of drugs, a first-degree misdemeanor; and (5) Count Five, possession of drugs, a first-degree misdemeanor.  Remy initially pleaded not guilty.

{¶3}  Remy filed a motion to suppress. At the suppression hearing, the court admitted two joint exhibits.  One joint exhibit was a Vinton County Sheriff's Office (VCSO) log report dated August 14, 2021.  The log indicates that VCSO received a report of a possible overdose involving a male slumped over a vehicle steering wheel and a female walking in a ditch.  Three minutes later, VCSO received a report that the male was awake but could barely talk and that the female was walking up and down the ditch looking for something she lost. The log indicates the vehicle was located and states, "JEFFREY REMY HAS ACTIVE S15 OUR OFFICE."  The log indicates "1 M IN CUSTODY" three minutes later.

{¶4}  The other joint exhibit was video footage from August 14, 2021.  When the footage begins, Remy is near a deputy's cruiser and then walks toward the back of another vehicle parked on the roadway.  The deputy exits his cruiser and asks for Remy's name.  Remy gives it. The deputy asks if he has identification. Remy searches through his wallet, makes some mostly incoherent statements, and tries to give the deputy what appears to be a debit or credit card.  Remy says, "What am I looking for here again?" and the deputy says, "Your I.D." The deputy points out the identification card to him.

{¶5}   Remy gives the deputy the card.  After communicating with the dispatcher, the deputy tells Remy to put his wallet down and that there is a warrant for his arrest. Remy says, "What warrant?"  The deputy says, "You got a warrant.  I'll figure all that out here in just a second."  The deputy tells Remy to put his stuff on the cruiser and put his hands behind his back. Remy says, "What'd I do?"  The deputy says he does not know and is figuring that out. Remy says he just got out of CBCF, i.e., a community-based correctional facility, on Friday. The deputy says, "Ok, well you got a warrant," and instructs Remy to put his hands behind his back. The deputy handcuffs Remy.  Remy says, "What'd I do.  I ain't do nothing."  A female approaches.  When she learns of the warrant, she says, "A warrant?  For what?" Remy says he got out of CBCF yesterday, and the female says, "He just got out yesterday."  She then says, "A warrant for what?"  The deputy says he does not know and will figure that out "when we get back to the office." The female says, "Oh, can't be."  The deputy searches Remy and finds suspected drugs.

{¶6}   The parties stipulated that: (1) a VCSO deputy arrested Remy based on a warrant listed in the VCSO database; (2) the warrant either had been recalled or advised law enforcement to issue Remy a summons rather than arrest him; and (3) as a result of Remy's arrest, there was a Fourth Amendment violation.

{¶7}   The trial court overruled the motion to suppress. The court explained that based on the initial reports called into the dispatcher about a possible overdose involving a male slumped over a steering wheel who could barely talk, Remy's "relatively incoherent, slurred speech" on the video footage, and the fact that he "attempted to present what appeared to be a credit or debit card when asked for identification," the deputy "could reasonably believe that crime was afoot (physical control of a motor vehicle

while under the influence, for example)." Therefore, the deputy had "reason to detain, search, and potentially arrest" Remy. However, the court assumed probable cause did not exist because the parties stipulated that there was a Fourth Amendment violation.

{¶8} The court found evidence discovered during the search was nonetheless admissible under the good faith exception to the exclusionary rule. The court found the facts of the case to be "on par with the facts in *Herring v. United States*, 555 U.S. 135 (2009)." The court stated that "[t]he good faith exception . . . as pronounced in *Herring*, suggests that Defendant must show that the mistakes of the VCSO are the result of 'systemic error or reckless disregard of constitutional requirements.'" The court explained that "there was an active warrant for Defendant" that "either had been recalled or was for a summons to be issued to Defendant, not for the arrest of Defendant." The court found the dispatcher advised the deputy of the warrant and that the dispatcher "may have negligently failed to convey the summons information to the deputy on scene, or the VCSO may have negligently failed to remove the recalled warrant from its database." However, no evidence had been presented of a systemic error.

{¶9} The court rejected the contention that there was a reckless disregard of constitutional requirements because Remy and his companion repeatedly told the deputy there should not be a warrant for his arrest. The court explained Remy argued that based on these assertions, "the deputy should have further investigated the existence of a warrant." The court disagreed. The court found that "[t]his appears to be a[n] additional step which the *Herring* Court did not suggest." The court stated: "If it were true that law enforcement were required to investigate the existence of a warrant each time that it inquired of dispatch, the process of law enforcement would bog down. If it were the case,

all defendants simply would suggest to law enforcement that they did not have warrants for their arrest." The court found that "[t]he law as pronounced in *Herring* is quite clear: once the deputy has been informed by the dispatcher that there is a warrant for the arrest of Defendant, the deputy may and should arrest Defendant."

**{¶10}** Subsequently, Remy pleaded no contest on all counts, and the trial court accepted the plea, found him guilty as charged, and conducted a sentencing hearing. The court issued a judgment entry of conviction and sentence from which Remy appealed. We dismissed the appeal for lack of jurisdiction because the entry did not include a sentence for the two counts of possession of drugs, so it was not a final, appealable order. *State v. Remy*, 2024-Ohio-2119, ¶ 1 (4th Dist.). Subsequently, the trial court issued a nunc pro tunc judgment entry of conviction and sentence which set forth sentences on all five counts. This appeal followed.

## II.  ASSIGNMENT OF ERROR

**{¶11}** Remy presents one assignment of error: "The trial court erred when it failed to suppress evidence found during an illegal search incident to arrest based on a revoked arrest warrant."

## III.  LAW AND ANALYSIS

**{¶12}** In the sole assignment of error, Remy contends the trial court erred by not suppressing evidence found during an illegal search incident to arrest based on a revoked arrest warrant. Remy maintains that the deputy did not rely on a good faith belief that there was an active warrant for his arrest. Remy asserts that even though the dispatcher told the deputy he had an active warrant, the deputy "received information contrary to the dispatcher's report" before arresting him. Remy asserts that he and his companion

"provided a clear reason" why the deputy "should have further investigated the alleged warrant." Specifically, Remy asked what the warrant was for and "explained that he did not understand how he could have an active warrant as he was released from a CBCF the day prior," and his companion "reiterated" that he "had just been released from custody the day before, so it seemed unlikely he had an active warrant." Remy asserts that unlike the officer in *State v. Hinerman*, 2019-Ohio-15 (5th Dist.), the deputy in this case "took no steps to verify that [he] in fact had an active warrant prior to arresting him." Remy maintains that "a reasonable officer would have confirmed the status of the warrant by some method" before arresting him. And he asserts that "[a]sking an officer to simply confirm whether there is an active warrant is reasonable considering the great protection the U.S. and Ohio Constitutions grant against unreasonable searches and seizures."

### A. Standard of Review

**{¶13}** "Normally, appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Codeluppi*, 2014-Ohio-1574, ¶ 7, citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The Supreme Court of Ohio has explained:

> When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *Burnside* at ¶ 8.

### B. Legal Principles

**{¶14}** "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State*

*v. Emerson*, 2012-Ohio-5047, ¶ 15. These provisions provide the same protection in felony cases. *State v. Hawkins*, 2019-Ohio-4210, ¶ 18. "While the text of the Fourth Amendment says nothing about suppressing evidence obtained in violation of the rights enunciated therein, the United States Supreme Court has created an 'exclusionary rule'— 'a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation.'" *State v. Dibble*, 2020-Ohio-546, ¶ 14, quoting *Davis v. United States*, 564 U.S. 229, 231-232 (2011). "[T]he exclusionary rule is not an individual right . . . ." *Herring*, 555 U.S. at 141. "Exclusion is not meant to serve as a remedy for the injury caused by an unconstitutional search or seizure but rather as a deterrent against future violations." *Dibble* at ¶ 15, citing *Davis* at 236-237. "Thus, the question whether the exclusionary sanction should be imposed is '"an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct."'" *Id.*, quoting *United States v. Leon*, 468 U.S. 897, 906 (1984), quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983).

{¶15} "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring* at 144. "[T]he benefits of deterrence must outweigh the costs." *Id.* at 141, citing *Leon* at 910. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* at 144. "Because the exclusionary rule's purpose is to deter unlawful police conduct, evidence should be suppressed '"only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."'" *Dibble*

at ¶ 18, quoting *Leon* at 919, quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975). The "'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" *Herring* at 145, quoting *Leon* at 922, fn. 23. "[W]hen police act in an objectively reasonable manner in executing a search believed in good faith to be legal, there is no bad conduct to deter." *Dibble* at ¶ 16, citing *Leon* at 918-920.

### C.  *Herring v. United States*

{¶16}  In *Herring*, an investigator learned Bennie Dean Herring had driven to the Coffee County Sheriff's Department to retrieve something from his impounded truck. *Id.* at 137. "Herring was no stranger to law enforcement," and the investigator asked the county warrant clerk to check for outstanding arrest warrants. *Id.* She found none. *Id.* at 137. The investigator asked her to check with the warrant clerk in neighboring Dale County. *Id.* After checking Dale County's computer database, the Dale County warrant clerk replied that there was an active warrant for Herring's failure to appear on a felony charge. *Id.* The Coffee County warrant clerk relayed this information to the investigator and asked the Dale County warrant clerk to fax a copy of the warrant as confirmation. *Id.* The Dale County warrant clerk discovered the warrant had been recalled five months earlier, but that information did not appear in the database. *Id.* at 138. By the time this information was relayed to the investigator, Herring had already been arrested and found to have drugs on his person and a gun in his vehicle. *Id.* at 137-138. He was indicted for illegally possessing the gun and drugs and filed a motion to suppress on the ground that his initial arrest was illegal because the warrant had been rescinded. *Id.* at 138. The

district court denied the motion, and the circuit court affirmed. *Id.* The United States Supreme Court affirmed the circuit court's judgment. *Id.* at 148.

**{¶17}** The Supreme Court accepted the parties' assumption that a Fourth Amendment violation had occurred and focused on whether the exclusionary rule should be applied. *Id.* at 139. The Supreme Court explained it had to "consider the actions of all the police officers involved." *Id.* at 140, citing *Leon*, 468 U.S. at 923, fn. 24. The Supreme Court stated that "[t]he Coffee County officers did nothing improper. Indeed, the error was noticed so quickly because Coffee County requested a faxed confirmation of the warrant." *Id.* The Supreme Court stated that the circuit court concluded that while someone in Dale County should have updated the computer database to reflect the recall of the arrest warrant, the error was negligent, not reckless or deliberate. *Id.* This fact was "crucial" to the Supreme Court's holding that this error was "not enough by itself to require 'the extreme sanction of exclusion.'" *Id.*, quoting *Leon* at 916. The Supreme Court explained that "[i]n a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system." *Id.* at 146. But there was "no evidence that errors in Dale County's system are routine or widespread," the investigator testified he never had reason to question information about a Dale County warrant, and the clerks "could remember no similar miscommunication ever happening on their watch." *Id.* at 147. The Supreme Court explained that because "the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, . . . when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" *Id.* at 147-148, quoting *Leon* at 907, fn. 6. "In such a

case, the criminal should not 'go free because the constable has blundered.'" *Id.* at 148, quoting *People v. Defore,* 242 N.Y. 13, 21 (1926).

### D.  *State v. Hinerman*

**{¶18}**  In *Hinerman*, the defendant was a passenger in a car that an officer stopped for operating without taillights.  *Hinerman*, 2019-Ohio-15, ¶ 4 (5th Dist.).  The officer collected the defendant's identification, and she told him she might have had a warrant but had taken care of it.  *Id.*  The officer proceeded to do a background check on her.  *Id.* at ¶ 5.  He contacted the dispatcher, who advised that the defendant had a valid warrant attached to her file.  *Id.* at ¶ 5.  The defendant again stated that she believed she had taken care of it.  *Id.*  A captain obtained a hard copy of the warrant and brought it to the scene.  *Id.* at ¶ 5.  The defendant was handcuffed, *id.* at ¶ 6, and a search of her purse revealed a suspected controlled substance, *id.* at ¶ 8.  Later, the officer learned the warrant had been cancelled.  *Id.* at ¶ 10.  The trial court granted the defendant's motion to suppress, *id.* at ¶ 12, but the Fifth District Court of Appeals reversed the trial court's judgment, *id.* at ¶ 46.

**{¶19}**  The appellate court explained that the exclusion of evidence in the case would not serve the exclusionary rule's purpose "because there was no police misconduct," *id.* at ¶ 34, so there was "nothing to deter," *id.* at ¶ 32.  The officers "made an arrest based upon a warrant listed in the database," the captain "went to the station and returned to the scene of the traffic stop with a hard copy of the warrant," and the officer testified, "'Everything was showing that she did have an active warrant.'"  *Id.* at ¶ 32.  The appellate court stated that "[t]he officers were not required to take [the defendant] at her word."  *Id.*  The appellate court explained that there was no evidence that errors in

the "police, dispatch or court's systems" were "routine or widespread." *Id.* at ¶ 34. The failure to update the database "was a simple act of negligence," and the officers who arrested the defendant "had an honest, legitimate belief that a valid arrest warrant existed." *Id.* at ¶ 34.

### E. Analysis

{¶20} The good faith exception to the exclusionary rule applies in this case. A reasonably well-trained officer would not have known that Remy's arrest, and the search incident to that arrest, were illegal under the circumstances. The deputy did nothing improper. He reasonably relied on information from the VCSO database, as conveyed by the dispatcher, that Remy had an arrest warrant. There is no evidence the deputy had knowledge from a source other than Remy and his companion that the information might be inaccurate. Although the defendant in *Hinerman* indicated the officer's information was inaccurate, and law enforcement obtained a hard copy of the warrant prior to the arrest in that case, that does not mean the deputy in this case was reckless or grossly negligent for not trying to obtain a hard copy of Remy's warrant or taking some other step to verify the dispatcher's information before arresting and searching Remy. The deputy could reasonably question the credibility of the statements of Remy and his companion given the evidence that Remy was under the influence, the fact that he and his companion had an incentive to lie to avoid his arrest, and absence of any other reason to distrust the VCSO database information.

{¶21} Someone should have updated the VCSO database to indicate that the warrant had been recalled or advised law enforcement to issue Remy a summons rather than arrest him. Or if that information was in the database, the dispatcher should have

conveyed it to the deputy. However, there is no evidence any error in the database or failure of the dispatcher to fully convey information in the database to the deputy was anything other than negligent. There is also no evidence of recurring or systemic negligence. As in *Herring*, the police mistake in this case was the result of negligence, not systemic error or reckless disregard of constitutional rights. Thus, any marginal benefit of deterrence does not outweigh the substantial societal cost of excluding the evidence discovered during the search.

{¶22} For the foregoing reasons, we conclude the trial court did not err when it failed to suppress evidence found during the search incident to arrest. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**