[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dibble,* Slip Opinion No. 2020-Ohio-546.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-546

THE STATE OF OHIO, APPELLANT, *v.* DIBBLE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Dibble,* Slip Opinion No. 2020-Ohio-546.]

*Criminal law—Fourth Amendment—Crim.R. 41(C)(2) does not bar a trial court from considering unrecorded oral testimony when evaluating a detective's good-faith reliance on a warrant—Court of appeals' judgment reversed and cause remanded.*

(No. 2018-0552—Submitted May 21, 2019—Decided February 20, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-629, 2017-Ohio-9321.

_____

**DEWINE, J.**

{¶ 1} This case deals with the good-faith exception to the exclusionary rule. Specifically, we are asked whether a court may consider evidence beyond the four corners of a search-warrant affidavit in determining whether an officer reasonably and in good faith relied on that warrant. We conclude that a court may do so.

## I. Nine Years of Litigation on a Motion to Suppress

{¶ 2} Laurence Dibble was a high-school teacher at the Wellington School in Columbus. He is accused of groping one student and secretly videotaping numerous other students in a school locker room while they were undressing.

{¶ 3} The police began investigating Dibble after two former students complained about improper sexual behavior. One of the former students told police that Dibble had touched her inappropriately while at school. Subsequently, the police obtained a warrant authorizing the search of Dibble's home. During the search, police seized videotapes of female students undressing. The recordings appeared to have been filmed by a camera that Dibble had hidden in the school locker room.

{¶ 4} In 2010, a grand jury indicted Dibble for one count of sexual imposition and 20 counts of voyeurism. The sexual-imposition charge related to the school-groping incident, while the voyeurism counts were based on the filming of the students while undressing.

{¶ 5} Dibble filed a motion to suppress seeking to invalidate the search warrant on the basis that the warrant affidavit contained materially false statements. The affidavit described incidents involving "Victim #1" and "Victim #2." Victim #1—the subject of the sexual-imposition offense—was the 18-year-old student whom Dibble was alleged to have groped at school. Victim #2 was the other woman who contacted the police. Dibble engaged in sexual contact with and took naked photographs of her. During the motion hearing, the detective acknowledged that the conduct involving Victim #2 did not allege a crime because she was an adult and no longer a student of Dibble's at the time, and because she said that she had consented to the interaction with Dibble. The detective further conceded that because the allegation of inappropriate physical contact with respect to Victim #1 occurred only at school, it did not by itself provide a basis for searching Dibble's home.

{¶ 6} But the detective also testified about other sworn statements that he had made before the judge at the time the warrant was issued. Specifically, he told the judge that the women had discussed occasions during which Dibble had taken photos of them and other underage students at school wearing nearly see-through unitards, purportedly for a theater project. The detective said he expressed his concern to the judge about the nature and location of those photographs. While that information was provided to the judge under oath, it was not recorded or transcribed. The affidavit itself contained no information about the photographs that Dibble took of the children at school.

{¶ 7} The trial court initially granted the motion to suppress. It held that by referring to the woman who engaged in sexual conduct with Dibble in his home as a "victim," despite her own statements that she was a consenting adult at the time, the detective had made false statements in the affidavit with the intent of misleading the judge. On appeal, this court reversed that judgment, concluding that the detective had simply used the identifier "victim" to protect the woman's identity and not in an attempt to intentionally mislead the judge who issued the warrant. *State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, 979 N.E.2d 247 ("*Dibble I*").

{¶ 8} On remand, the trial court determined that the affidavit filed in support of the warrant did not establish probable cause to search the home. But the court further found that the detective had acted in good faith in relying on the warrant, and the court therefore denied Dibble's motion to suppress. After pleading no contest to all the charges, Dibble appealed the denial of the motion to suppress to the Tenth District Court of Appeals.

{¶ 9} The arguments on appeal centered on the good-faith exception that was set forth by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We adopted the *Leon* analysis in *State v. Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986). Under the good-faith

exception, evidence obtained during a search conducted pursuant to a warrant that is unsupported by probable cause will not be excluded if the officers who obtained the evidence acted reasonably in relying on the warrant. *Leon* at paragraph one of the syllabus; *Wilmoth* at paragraph one of the syllabus. The *Leon* court explained, however, that suppression would still be appropriate in circumstances when (1) the supporting affidavit contained information the affiant knew to be false or would have known to be false but for reckless disregard of the truth, (2) the issuing magistrate wholly abandoned his judicial role, (3) the warrant was based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' " or (4) the warrant is so facially deficient in terms of particularity that the executing officers could not reasonably presume it to be valid. *Leon* at 923, quoting *Brown v. Illinois*, 422 U.S. 590, 610-611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part); *State v. George*, 45 Ohio St.3d 325, 331, 544 N.E.2d 640 (1989).

{¶ 10} The Tenth District determined that the trial court had failed to consider the third situation discussed in *Leon*—whether the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *State v. Dibble*, 10th Dist. Franklin No. 13AP-798, 2014-Ohio-5754 ("*Dibble II*"), ¶ 24. The Tenth District therefore remanded the case to the trial court to consider the third *Leon* factor. *Id.*

{¶ 11} On the third go-around, the trial court considered the remaining *Leon* factor and concluded that the affidavit was not so lacking in probable cause as to render the detective's reliance on the warrant unreasonable. Thus, the court denied the motion to suppress and Dibble appealed again.

{¶ 12} This time, the Tenth District concluded that under Crim.R. 41(C)(2), the detective's testimony regarding his unrecorded conversation with the judge was not admissible at the suppression hearing. *State v. Dibble*, 2017-Ohio-9321, 92 N.E.3d 893, ¶ 26 (10th Dist.) ("*Dibble III*"). Then, considering only the

4

information in the affidavit, the Tenth District decided that it was not reasonable for the detective to have relied on the warrant because it was " 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at ¶ 39, quoting *Leon*, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677. Having determined that the good-faith exception did not apply, the court of appeals reversed the trial court's judgment and ordered that judgment be entered in favor of Dibble. *Id.* at ¶ 40.

{¶ 13} The state appealed, and we accepted the cause on the following proposition of law:

> In deciding whether the good-faith exception to the exclusionary rule applies to a search conducted under a search warrant, a court can consider sworn but unrecorded oral information that the police gave to the judge at the time of the approval of the warrant.

*See* 153 Ohio St.3d 1432, 2018-Ohio-2639, 101 N.E.3d 464. We answer that question in the affirmative.

## II. The Good-Faith Exception to the Exclusionary Rule

### A. The objective of the exclusionary rule is to deter police misconduct

{¶ 14} The Fourth Amendment to the United States Constitution[1] provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable

---

1. Curiously, the parties have not presented any arguments under the Ohio Constitution in this court or in the proceedings below. Thus, we have no occasion to consider here the protections afforded under Article I, Section 14 of that document.

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

While the text of the Fourth Amendment says nothing about suppressing evidence obtained in violation of the rights enunciated therein, the United States Supreme Court has created an "exclusionary rule"—"a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-232, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011).

{¶ 15} Exclusion is not meant to serve as a remedy for the injury caused by an unconstitutional search or seizure but rather as a deterrent against future violations. *Id.* at 236-237. Thus, the question whether the exclusionary sanction should be imposed is " 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.' " *Leon*, 468 U.S. at 906, 104 S.Ct. 3405, 82 L.Ed.2d 677, quoting *Illinois v. Gates*, 462 U.S. 213, 223, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 16} "[T]he deterrence benefits of exclusion 'vary with the culpability of the law enforcement conduct' at issue." *Davis* at 239, quoting *Herring v. United States*, 555 U.S. 135, 143, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (cleaned up). When a Fourth Amendment violation is occasioned by "deliberate," "reckless," or "grossly negligent" police conduct, the deterrent benefits of exclusion are said to outweigh its costs. *Id*. at 238; *see also Herring* at 144 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system"). But, when police act in an objectively reasonable manner in executing a search believed in good faith to be legal, there is no bad conduct to deter. *Leon* at 918-920.

{¶ 17} The United States Supreme Court has held that the exclusionary rule should not be applied in situations in which an officer has relied in good faith on a warrant issued by a neutral and detached magistrate or judicial officer, notwithstanding the fact that the warrant is later found to be invalid. *Id*. at 913. But "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable." *Id.* at 922.

{¶ 18} Because the exclusionary rule's purpose is to deter unlawful police conduct, evidence should be suppressed " 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " *Leon*, 468 U.S. at 919, 104 S.Ct. 3405, 82 L.Ed.2d 677, quoting *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975). When a detached and neutral magistrate has issued a search warrant and the police have acted within its scope, there is typically nothing more that the police can do to comply with the law. *Leon* at 920-921. It is ultimately the responsibility of the magistrate to determine whether there is a sufficient legal basis to issue a warrant, and in most instances, police officers are not expected to second-guess the judge. *Id*. at 921. Suppressing evidence because of an "error by a magistrate can never deter future police misconduct." *Wilmoth*, 22 Ohio St.3d at 266, 490 N.E.2d 1236; *see also Leon* at 921.

{¶ 19} The *Leon* court ultimately summarized the exclusion calculus this way:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their

affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

*Leon* at 926.

### B. All of the circumstances must be considered

{¶ 20} The question we must address in this case is whether a court may look to information outside the four corners of the affidavit when evaluating an officer's good-faith reliance on a warrant. Viewed in light of the exclusionary rule's emphasis on deterrence, it becomes apparent that the answer is yes.

{¶ 21} The case of *United States v. Frazier*, 423 F.3d 526 (6th Cir.2005) is instructive. There, the Sixth Circuit considered whether information omitted from the affidavit but provided to the magistrate under oath could be considered in evaluating the officer's good-faith reliance on the warrant subsequently issued by the magistrate. In holding that the external information could be considered, the Sixth Circuit pointed out that in both *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, and *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), the Supreme Court considered information outside the four corners of the affidavit in deciding whether the officers had acted in good faith. The *Leon* court explained:

[O]ur good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered.

*Leon* at 922, fn. 23. By permitting consideration of whether the application had previously been rejected, the *Leon* court necessarily authorized courts to look beyond the four corners of the affidavit. *See Frazier* at 534. Likewise, in *Sheppard*, the court relied upon a conversation between the judge and the detective at the time the warrant was issued in determining that the detective had reasonably relied on the warrant. *Sheppard* at 989-991.

{¶ 22} Because the goal of the exclusionary rule is deterrence, it makes sense to consider information known to the officer and revealed to the judge even when that information is not included in the affidavit. As the *Frazier* court explained:

> [W]e are unable to envision *any* scenario in which a rule excluding from the *Leon* analysis information known to the officer and revealed to the magistrate would deter police misconduct. *Leon* only comes into play when an officer has a warrant, albeit a defective one. Because a judge's initial probable cause determination is limited to the four corners of the affidavit, an officer has no incentive to exclude from the affidavit information that supports a finding of probable cause only to reveal this information to the magistrate by parol. If the affidavit is not sufficient to support a finding of probable cause, the officer is unlikely to get a search warrant, and if the officer does not get a search warrant, he may not rely on *Leon*. Any deterrent—even the exclusionary rule—is wholly unnecessary in the absence of an incentive to engage in undesirable behavior.

(Emphasis sic and citation omitted.) *Frazier* at 535. Thus, the court held that "a court reviewing an officer's good faith under *Leon* may look beyond the four

corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *Id.* at 535-536.

{¶ 23} The Fourth Circuit similarly found it "proper to consider any contemporaneous oral statements to the magistrate in conjunction with the supporting affidavit in assessing the reasonableness of an officer's reliance on a warrant." *United States v. Legg*, 18 F.3d 240, 243 (4th Cir.1994), citing *United States v. Edwards*, 798 F.2d 686, 691-692 (4th Cir.1986). This is because the good-faith analysis is based not on the sufficiency of the affidavit, but rather on the officer's reliance on the *warrant*, and the latter inquiry must take into account all the information both known to the officer and presented to the magistrate. *Legg* at 243, fn. 1.

{¶ 24} The dissent acknowledges that it is appropriate to consider the totality of the circumstances when conducting a general review of an officer's good-faith reliance on a warrant. It contends, however, that evidence outside the four corners of an affidavit cannot be probative of the third *Leon* factor—whether the affidavit is so lacking in indicia of probable cause that the officer could not have reasonably relied upon it, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 25} In concluding that a court may not consider an officer's sworn testimony to the issuing judge in determining whether the officer executed a warrant in good faith, the dissent loses sight of the purpose of the exclusionary rule—to prevent police misconduct. Not surprising in light of the rule's focus on the officer's state of mind, the federal circuit courts have reached the opposite conclusion from that reached by the dissent.

{¶ 26} In *Legg*, the Fourth Circuit rejected the notion that an affidavit lacking sufficient indicia of probable cause categorically precluded application of the good-faith exception. 18 F.3d at 243, fn. 1. As that court explained, "even assuming that the affidavit itself lacked sufficient indicia of probable cause to support reasonable reliance on the warrant, the affidavit did not contain all of the

10

facts presented to the magistrate." *Id.* at 243. Thus, the Fourth Circuit concluded that statements made to the magistrate, considered "in conjunction with" the affidavit, established an officer's objectively reasonable reliance on the warrant. *Id.* at 244; *see also United States v. Perez*, 393 F.3d 457, 463 (4th Cir.2004) (concluding that the affidavit, when considered together with oral statements presented to the magistrate, was not so lacking in indicia of probable cause that the officer could not have reasonably relied on the warrant).

{¶ 27} The Sixth Circuit, in *Frazier*, also considered information that was provided to the magistrate but was omitted from the affidavit when evaluating an officer's good-faith reliance on a warrant. The *Frazier* court determined that in light of the additional extrinsic information given to the magistrate, the insufficient affidavit was not so lacking in indicia of probable cause that it could not be reasonably relied upon. 423 F.3d at 535-536. In so holding, the court explained that evaluating whether an officer's reliance on a warrant was objectively reasonable requires a " ' "less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." ' " *Id.* at 536, quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir.2004), quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002).

{¶ 28} Thus, even though an affidavit presented in support of a warrant might be insufficient, an officer's reliance on the warrant might nevertheless be reasonable when he has provided information to the magistrate beyond the affidavit. *See Legg* at 243, fn. 1. Therefore, a court "should examine the totality of the information presented to the magistrate [or judge] in deciding whether an officer's reliance on the warrant could have been reasonable." *Id.*

### III. Crim.R. 41(C)(2) Does Not Bar Consideration of Extrinsic Evidence for Purposes of the Good-Faith Analysis

{¶ 29} Before reaching the constitutional question, the Tenth District determined that the sworn but unrecorded discussion that took place between the

detective and the judge was inadmissible under Crim.R. 41(C)(2). *Dibble III*, 2017-Ohio-9321, 92 N.E.3d 893, at ¶ 30. That rule provides:

> If the judge is satisfied that probable cause exists, the judge shall issue a warrant identifying the property to be seized and naming or describing the person or place to be searched or the person or property to be tracked. * * * Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. *Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.*

(Emphasis added.) The conversation between the judge and detective regarding the unitard photographs was not recorded, transcribed, or made a part of the affidavit. Nonetheless, that information may be considered in evaluating the detective's good-faith reliance on the warrant under the totality of the circumstances, subject to any credibility determinations by the trial court. A few points compel this conclusion.

{¶ 30} First, the explicit terms of the rule do not bar consideration of such evidence. The recording provision in Crim.R. 41(C)(2) is nestled into a paragraph focused entirely on a judge's finding of probable cause when issuing a search warrant. Thus, it is not clear that the provision applies beyond the court's review of the judge's probable-cause determination. Further, it is a rule of admission, not a rule of exclusion: if the requirements of the rule are met, such "testimony shall be admissible at a hearing on a motion to suppress." Nothing in the language of the rule directs that unrecorded and untranscribed evidence may not be considered in determining an officer's good faith.

{¶ 31} The dissent concludes, based on the history of Crim.R. 41, that the rule should be read as prohibiting a court from considering unrecorded testimony for any purpose—not just a probable-cause determination. The recording requirement was included in Crim.R. 41 from the time of the rule's adoption in 1973. *See* Katz, *Ohio Rules of Criminal Procedure: A Guide to Criminal Procedure in Ohio Under the New Criminal Rules* 154-155 (1973). Thus, that requirement predated the United States Supreme Court's announcement of the good-faith exception to the exclusionary rule in its 1984 decision in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. Given that the good-faith exception to the exclusionary rule had not been enunciated at the time that Crim.R. 41 was adopted, it is difficult to conclude that the rule was meant to prohibit the use of unrecorded sworn testimony for the purpose of evaluating good faith.

{¶ 32} Rather, as the dissent notes, the recording requirement was made a part of the rule "to insure a later review of the finding of probable cause." Katz at 157; *see also* 1 Katz, Giannelli, Lipton, & Crocker, *Criminal Law*, Section 9:10, 209 (3d Ed.2009) (testimony in support of an affidavit), and at fn. 1, citing Crim.R. 41(C) and *Moya v. State*, 335 Ark. 193, 202, 981 S.W.2d 521 (1998) (holding pursuant to a state procedural rule that a court may not consider unrecorded oral testimony in determining probable cause, but that such testimony could be used to determine whether an officer relied in good faith on an otherwise invalid warrant). Indeed, when supplemental testimony is recorded, the reviewing court may consider that information in its review of the issuing judge's finding of probable cause; when the testimony is not recorded or transcribed, the court's review of probable cause is limited to the four corners of the affidavit. *See* Katz, Giannelli, Lipton, & Crocker at 209; *see also State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 39.

{¶ 33} But even if we were to read the rule as requiring that all such statements be recorded, it would not change the result. We have previously held

that suppression is warranted for noncompliance with Crim.R. 41 only when the rule violation was of "constitutional magnitude," *Wilmoth*, 22 Ohio St.3d at 263, 490 N.E.2d 1236, or, in other words, " 'renders the search unconstitutional under traditional fourth amendment standards.' " (Emphasis deleted.) *Id.*, quoting *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980). The *Vasser* court explained that evidence should be excluded for nonconstitutional rule violations only when " ' "(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." ' " *Vasser* at 510, quoting *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir.1978), quoting *United States v. Burke*, 517 F.2d 377, 386 (2d Cir.1975).

{¶ 34} None of those circumstances apply here. The Fourth Amendment has never been held to require suppression for a failure to record an oral conversation taken under oath as part of a warrant application. Indeed, the Amendment's explicit terms require only that the probable-cause determination be "supported by oath or affirmation." And as explained above, the court may consider all the circumstances in deciding whether the detective reasonably relied on the warrant. Nor is there any indication that the search would not have taken place or would have been more limited in scope had the oral conversation been transcribed. Indeed, the additional information provided to the judge about the inappropriate photographs of underage students further supported a finding of probable cause. Finally, there have been no allegations that either the judge or detective acted with deliberate intent to circumvent the rule's recording requirement.

{¶ 35} In addition, whether a court records an applicant officer's statements has no bearing on the officer's good-faith reliance on the warrant, because the officer has no control over the court's recording and transcription procedures. It would seem unduly onerous, once probable cause has been established, to require

a court to delay issuing a search warrant until a court reporter is able to transcribe additional testimony and attach it to the warrant application. On the contrary, these are requirements that would likely be completed *after* the warrant has been issued, and the judge's subsequent failure to ensure fulfillment of those requirements would have no bearing on the officer's good-faith reliance that the warrant itself was based on probable cause. Indeed, the very fact that the issuing judge would take supplemental testimony from an officer during the application process would reasonably lead the officer to believe that the testimony has legal significance and is being properly considered in assessing probable cause.

{¶ 36} For those reasons, we conclude that Crim.R. 41(C)(2) does not bar consideration of unrecorded oral testimony for the purpose of evaluating a detective's good-faith reliance on the warrant.

## IV. Considering the Totality of the Information Presented to the Judge, the Detective's Reliance on the Warrant was Reasonable

{¶ 37} Following our remand in *Dibble I*, the trial court twice determined that the detective relied on the warrant in good faith. The only question that remains is whether the detective's reliance on the warrant was objectively reasonable, notwithstanding the trial court's later determination that the affidavit was insufficient to establish probable cause. As explained above, we may consider "all of the circumstances," *Leon*, 468 U.S. at 922, 104 S.Ct. 3405, 82 L.Ed.2d 677, fn. 23, in evaluating the reasonableness of the detective's reliance on the warrant.

{¶ 38} The detective testified that he told the judge about the allegations regarding photographs taken by Dibble of underage students in "practically see-through" unitards. And he expressed concern to the judge about where and how those photographs were being used. The judge issued the search warrant after hearing this testimony. Based on all the information known to the detective and provided to the judge at the time the warrant was issued, it was entirely reasonable for the detective to rely on the judge's probable-cause determination.

**{¶ 39}** This is not a situation in which the applying officer has intentionally omitted facts that, if included, would tend to undermine a finding of probable cause. Rather, the information pertaining to the unitard photographs further supported a probable-cause determination. *See*, *e.g.*, *United States v. Martin*, 297 F.3d 1308, 1320 (11th Cir.2002).

**{¶ 40}** When viewing the affidavit in light of the totality of the information provided, the affidavit was not so lacking in indicia of probable cause that the detective's reliance on it was unreasonable. And the oral testimony given to the judge provides additional support for the allegations in the affidavit. Even if the statement that Dibble took naked photographs of a former student does not itself allege a crime, it was not unreasonable for the detective to connect that conduct with the inappropriate photographs that Dibble had taken at school. And since all that information was provided to the judge as well, it was reasonable for the detective to rely on the judge's verification that probable cause existed for the search.

**{¶ 41}** The error in this case belongs to the judge, not the detective. Because application of the exclusionary rule would not serve to deter any bad police conduct, suppression is unwarranted. We therefore reverse the judgment of the Tenth District and remand the matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

KENNEDY, TUCKER, FISCHER, and STEWART, JJ., concur.

DONNELLY, J., dissents, with an opinion joined by O'CONNOR, C.J.

MICHAEL TUCKER, J., of the Second District Court of Appeals, sitting for FRENCH, J.

_____

**DONNELLY, J., dissenting.**

{¶ 42} After multiple appeals arising from appellee Laurence Dibble's 2010 motion to suppress, one very specific question remained before the trial court: was Detective Andrew Wuertz's search-warrant affidavit, alleging an act of gross sexual imposition at the school in which Dibble taught, so lacking in indicia of probable cause that it was unreasonable for any official to rely on it when deciding to search all of Dibble's media and data-storage devices in his home? Appellant, the state, could not prevail on that question within the four corners of Detective Wuertz's affidavit. Instead, it asserted that Detective Wuertz provided supplemental, unrecorded oral testimony to the issuing judge about an independent crime, which was not even mentioned in the warrant, that provided some indicia of probable cause to search Dibble's media and data-storage devices in his home.

{¶ 43} An even more specific question is now before this court: did Crim.R. 41(C)(2)[2] prohibit Detective Wuertz's alleged unrecorded oral testimony from being considered at Dibble's suppression hearing? Decidedly, the answer is "yes." Crim.R. 41(C)(2) unequivocally requires a warrant applicant's supplemental testimony to be recorded in order for it to be "admissible at a hearing on a motion to suppress." Because the fundamental purpose of Crim.R. 41(C)(2) is to prevent the state from providing unrecorded oral testimony to create probable cause post hoc and because that is precisely what the state did here, Detective Wuertz's alleged unrecorded oral testimony should have been excluded from the evidence that the reviewing judge considered when ruling on Dibble's motion to suppress. By

---

1. Crim.R. 41(C)(2) provides:

> Before ruling on a request for a warrant, the judge may require the affiant to appear personally, and may examine under oath the affiant and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.

holding that the state is allowed to present unrecorded testimony to supplement a warrant affidavit at a suppression hearing to establish an officer's good-faith reliance on a warrant, the majority is providing the state with a complete end run around the very protections intended by the rule. The majority's holding paves the way for sloppy police work at best and perjury at worst. For these reasons, I dissent.

## I. BACKGROUND

**{¶ 44}** During the procedural history of this case, I believe some important facts, which only recently became relevant, were lost in the shuffle. I am therefore taking pains to detail additional background information from this case in order to provide adequate context for the many judicial decisions that have been entered over the past nine years, as well as the decision being entered today.

### A. The police report, search, charges, and added charges

**{¶ 45}** On February 2, 2010, E.S. reported to police that in April 2009, when she was a senior in high school, Dibble—her drama teacher—had groped her genitals and buttocks during an incident when they were in the theater area of the school. E.K., one of Dibble's former students, accompanied E.S. to the police station to help report what had happened to E.S. Police interviewed E.K. as well. E.K. stated that she had been involved in a relationship with Dibble when she was a young adult in college. She stated that they engaged in consensual sexual contact and that he had taken nude photographs of her.

**{¶ 46}** Detective Wuertz filed a police report identifying E.S. as a victim of gross sexual imposition. Detective Wuertz did not file a report regarding E.K.'s statements because he concluded that Dibble's actions with E.K. did not involve any criminal behavior. The next day, February 3, 2010, Detective Wuertz obtained a search warrant from Judge Andrea C. Peeples to search Dibble's home for the following:

> Evidence of the crime of Gross Sexual Imposition, to include Computers, printers, scanners, photographs, cameras, video cameras, videotapes, * * * memory devices and storage media, * * * and any and all types of related computer equipment and electronic storage media * * * as well as fruits and instrumentalities of other crimes as yet unknown.

{¶ 47} In Detective Wuertz's affidavit in support of the warrant, he described the sexual contact at the school reported by E.S., whom he identified as "Victim #1." Despite the fact that no crime was associated with the young adult, E.K., the affidavit also described Dibble's sexual interactions with E.K., identifying her as "Victim #2." The affidavit states that any of Dibble's media or media-storage devices might contain evidence "to substantiate Victim #1 and Victim #2's claims." That same day, February 3, 2010, police arrested Dibble and filed a complaint at the Franklin County Municipal Court, charging him with gross sexual imposition.

{¶ 48} The police confiscated 183 pieces of media or media storage from Dibble's home.

{¶ 49} According to the state:

> Detectives sought this evidence *based on E.K.'s statements* that he digitally photographed her on several occasions. While going through the vast number of video tapes, CD's and DVD's taken from defendant's home, police found a tape that appeared to have been made using a hidden camera in a locker room at the * * * School. The video tape showed 20 different girls trying on costumes. All of the girls would strip naked before trying on the leotard-type costumes. It was *later learned* by police that the defendant

> instructed these girls to be completely nude underneath the costume
> in order for it to fit properly.

(Emphasis added.) The video tape showing 20 female students trying on costumes was made sometime around 2003. When Detective Wuertz contacted the young women identified in the video tape, several of them informed Detective Wuertz about Dibble's instruction that they wear nothing under their costumes. Subsequent to the discovery and investigation into the circumstances of the video tape, Dibble was indicted on March 29, 2010, in the Franklin County Court of Common Pleas on one count of sexual imposition involving E.S. and 20 counts of voyeurism involving the other students identified in the video tape.

### B. The first suppression proceedings and appellate review

{¶ 50} At the first hearing on Dibble's motion to suppress—and the only hearing in which evidence was presented—Detective Wuertz was the only witness who testified. He acknowledged that both the police report and the criminal complaint were limited to a crime involving only E.S., and nothing about the crime of gross sexual imposition against E.S. provided probable cause to search Dibble's home. He acknowledged that although he used E.K.'s statements to justify searching Dibble's home, there was nothing illegal about Dibble's interactions with E.K. He provided new information, though, as to why he sought to search Dibble's home.

{¶ 51} Detective Wuertz testified that in addition to E.S. describing the groping incident at school, she also described occasions during which Dibble photographed theater students wearing leotard costumes that were "practically see-through, if not see-through," after instructing the students to wear nothing underneath the costumes. Detective Wuertz testified that he told Judge Peeples about the photographs when answering her questions about the search warrant. He stated that he told Judge Peeples that "due to the possible see-through of the

unitards [he] was very concerned about where those photos were and what exactly those were being used for."

{¶ 52} In the trial court's decision on Dibble's motion to suppress, it primarily applied *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Pursuant to *Franks*, if a statement is knowingly and intentionally false or made with reckless disregard for the truth, and if the remaining statements fail to establish probable cause, "the search warrant must be voided and the fruits of the search excluded." *Id.* at syllabus. The trial court held that by portraying E.K. as a "victim" in his affidavit, Detective Wuertz knowingly and intentionally made false statements about her in order to create probable cause to search Dibble's home. After striking the false statement from consideration, the court concluded that the warrant was not supported by probable cause. The court further held that the good-faith exception to suppression could not apply because Detective Wuertz could not objectively and in good faith rely on a warrant that was given based on statements that he knew to be false. It also held that the good-faith exception could not apply through consideration of Detective Wuertz's alleged off-the-record statements to Judge Peeples because he lacked credibility regarding that conversation. Accordingly, the trial court suppressed the evidence that was seized during the search of Dibble's residence.

{¶ 53} After the Tenth District Court of Appeals affirmed the trial court's judgment, this court accepted jurisdiction over the state's appeal, 130 Ohio St.3d 1493, 2011-Ohio-6556, 958 N.E.2d 956, and addressed the narrow issue of whether Detective Wuertz's use of the word "victim" to describe E.K. rose to the level of a statement that is knowingly and intentionally false or made with reckless disregard for the truth as stated in *Franks*, 133 Ohio St.3d 451, 2012-Ohio-4630, 979 N.E.2d 247. This court held that a determination pursuant to *Franks* must consider the affiant's statements in light of their lay meaning rather than any technical legal meaning. This court concluded that the lower courts were overly technical in

construing the word "victim" by relying on strictly legal terms and that those courts should not have concluded that Detective Wuertz's common, everyday use of the word "victim" was a purposeful attempt to create probable cause necessary for a search warrant for Dibble's home.

## C.  The second round

**{¶ 54}** On remand to the trial court, no new evidence was offered.  In its second decision, the trial court denied Dibble's motion to suppress.  The court first held that Detective Wuertz's affidavit, by his own admission, clearly lacked any basis that evidence of a crime would be found in Dibble's home.  Accordingly, the warrant was not supported by probable cause.  The court went on to hold, without much explanation, that Detective Wuertz must have been acting in good-faith reliance on the warrant, preventing suppression of the evidence pursuant to *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  Finally, the court specified that it was not considering Detective Wuertz's extrinsic statements to Judge Peeples.  The court noted that Crim.R. 41(C)(2) prohibited it from considering such unrecorded testimony.  The court declined to rule on the state's argument that Crim.R. 41(C)(2) was unconstitutional, concluding that its finding of good faith mooted the matter.

**{¶ 55}** In its second appellate decision, 10th Dist. Franklin No. 13AP-798, 2014-Ohio-5754, the Tenth District noted that the trial court failed to address one circumstance in which the good-faith exception under *Leon* does not apply: when a warrant's supporting affidavit is so devoid of indicia of probable cause that an officer could not objectively believe that probable cause existed.  *Leon* at 923.  Because an examination of that specific issue was crucial to the good-faith-exception analysis and judgment in Dibble's case, the Tenth District reversed and remanded the case to the trial court yet again.

### D. The third round

{¶ 56} By the third time Dibble's suppression motion was before the trial court, a new judge had been assigned to the case. Although the new judge indicated that the appellate court's evidence-specific mandate should require a new evidentiary hearing, the parties asked the court to simply review the evidence that had already been provided from the original hearing. After reviewing that evidence, the trial court denied Dibble's motion to suppress. The trial court did not discuss Crim.R. 41(C)(2), but it pointed specifically to Detective Wuertz's alleged unrecorded testimony regarding Dibble's "illicit photos of the minor victim [E.S.]" as helping to establish probable cause to search Dibble's home. The trial court stated that since it decided that Detective Wuertz's sworn oral and written statements provided probable cause for the warrant outright, the affidavit certainly was not so lacking in indicia of probable cause as to render belief in probable cause unreasonable.

{¶ 57} Dibble appealed and in its third decision, the Tenth District reversed, holding that the trial court had exceeded the scope of the remand by making a general probable-cause determination that was contrary to the settled law of the case. 2017-Ohio-9321, 92 N.E.3d 893. The appellate court further held that Crim.R. 41(C)(2) prohibited the trial court from considering Detective Wuertz's alleged unrecorded testimony regarding Dibble's illicit photographs of E.S. *Id.* at ¶ 27. Setting that evidence aside, the appellate court concluded that "the affidavit objectively produces no set of facts that a reasonable law enforcement officer could in good faith rely on to search a house." *Id.* at ¶ 40.

### II. ANALYSIS

{¶ 58} The state contends that Crim.R. 41(C)(2) does not bar the admission of a warrant applicant's unrecorded oral testimony at later suppression hearings or, at the very least, it does not bar such evidence for purposes of a good-faith-exception analysis pursuant to *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

The state is wrong, particularly in the context of this case. The plain language of the rule prohibits such evidence in general, and its history demonstrates an express purpose to exclude exactly the kind of evidence presented by the state in this case. Crim.R. 41(C)(2)'s recorded-testimony requirement must be applied in this case in order to ensure that officers of the law protect the Fourth Amendment rights of our citizenry.

## A. The relationship between the Fourth Amendment and Crim.R. 41(C)(2)

{¶ 59} As the Tenth District noted, it is already the law of the case that Detective Wuertz's affidavit fell short of establishing probable cause to justify the search of Dibble's home. The general issue of probable cause is therefore not technically before the court, and the issue that remains is limited to whether the good-faith exception to the exclusionary rule provided in *Leon* applies here and to future cases with similar fact patterns. That being said, in applying *Leon*, this court must examine whether Detective Wuertz's affidavit does not merely just fall short of establishing probable cause but whether the affidavit failed to provide any arguable indication of probable cause. The existence of probable cause therefore remains at the very heart of this court's review. The procedure for establishing probable cause is also at the very heart of the purposes underlying Crim.R. 41(C)(2). In order to properly review the probable-cause argument contained within the state's good-faith-exception argument, as well as the role of Crim.R. 41(C)(2) in this case, it is essential for this court to examine the general issue of probable cause and its constitutional underpinnings.

{¶ 60} The Fourth Amendment to the United States Constitution[3] requires that a search warrant may issue only upon a showing of "probable cause, supported

---

2. As noted in the majority opinion, the parties' failure to present arguments regarding the Ohio Constitution limits this court's discussion to the Fourth Amendment of the United States Constitution. This leaves open the question whether the Ohio Constitution might offer greater rights and protections to our citizenry under these circumstances. *See State v. Mole*, 149 Ohio St.3d 215,

by Oath or affirmation." When a court reviews a probable-cause determination, it must review the facts that supported the issuing judge's probable-cause determination. In fact, a court must limit its review to *only* those facts that were presented to the issuing judge. *See Aguilar v. Texas*, 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), fn. 1, *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Giordenello v. United States*, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). Thus, any information known by the warrant applicant that is not presented to the issuing judge is irrelevant to a probable-cause determination. *United States v. Abernathy*, 843 F.3d 243, 249-250 (6th Cir.2016).

{¶ 61} In some jurisdictions, courts are limited in probable-cause determinations to a review of the "four corners" of the affidavit. *See*, *e.g.*, *Commonwealth v. O'Day*, 440 Mass. 296, 297, 798 N.E.2d 275 (2003); *Bonds v. State*, 403 S.W.3d 867, 873 (Tex.Crim.App.2013). In many jurisdictions, including Ohio, warrant applicants may supplement the information in their affidavits with sworn oral statements to the issuing judge. 1 John M. Burkoff, *Search Warrant Law Deskbook*, Section 6:7, at 224-225 (2019), fn. 3. Some jurisdictions have held that the Fourth Amendment's failure to specify any format for the requisite "Oath or affirmation" before obtaining a warrant means that there is no constitutional requirement to record, write, or otherwise memorialize any sworn statements made to an issuing judicial officer. *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir.1994); *United States v. Shields*, 978 F.2d 943, 946 (6th Cir.1992) ("The Fourth Amendment does not require that statements made under oath in support of probable cause be tape-recorded or otherwise placed on the record or made part of the affidavit"). But, although there is no specific format or recording requirement

---

2016-Ohio-5124, 74 N.E.3d 368, ¶ 20; *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 23; *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 46-48.

in the text of the Fourth Amendment, many have opined that the constitutional provision would be meaningless without the ability to objectively review the statements that informed the issuing judge's probable-cause determination:

> The substantive right created by the requirement of probable cause is hardly accorded full sweep without an effective procedural means of assuring meaningful review of a determination by the issuing magistrate of the existence of probable cause. Reliance on a record prepared after the fact involves a hazard of impairment of that right. It is for this reason that some States have imposed the requirement of a contemporaneous record.

*Christofferson v. Washington*, 393 U.S. 1090, 1090-1091, 89 S.Ct. 855, 21 L.Ed.2d 783 (1969) (Brennan, J., dissenting); *see also State v. Fariello*, 71 N.J. 552, 559, 366 A.2d 1313 (1976); *United States v. Hittle*, 575 F.2d 799, 802 (10th Cir.1978).

{¶ 62} The dangers in not requiring a record of a warrant applicant's statements to an issuing judge are manifold. It is well established that evidence discovered during a search cannot be used after the fact to establish the probable cause that was necessary to have lawfully conducted the search in the first place. *Whiteley v. Warden*, 401 U.S. 560, 567, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), fn. 11; *Johnson v. United States*, 333 U.S. 10, 16-17, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Akron v. Williams*, 175 Ohio St. 186, 189, 192 N.E.2d 63 (1963). Yet, allowing an officer to establish probable cause on the record for the first time at a suppression hearing invites the officer to use evidence that has been discovered after a search has been conducted to bolster the issuing judge's probable-cause determination and to then bolster the officer's and the state's good-faith-exception argument. Taylor, *Using Suppression Hearing Testimony to Prove Good Faith Under United States v. Leon*, 54 U.Kan.L.Rev. 155, 221 (2005) ("a police officer

at a suppression hearing may be especially willing to lie to save the fruits of a search because the officer's suspicions (whatever their original basis) have turned out to be justified").

{¶ 63} Moreover, the human memory remains fallible. *Fariello* at 560-561; *Christofferson* at 1091, quoting *Glodowski v. State*, 196 Wis. 265, 271, 220 N.W. 227 (1928) (Brennan, J., dissenting). By the time a suppression hearing takes place, a warrant applicant may not remember the exact succession of events that led up to an indictment, including when and where he gathered certain information and when and where he shared that information to others. "[T]he possible initial uncertainty of the affiant may vanish when the search proves to be fruitful. Inadvertent additions to the remembered conversation are not unlikely." *Boyer v. Arizona*, 455 F.2d 804, 807 (9th Cir.1972) (Ely, J., dissenting). And the issuing judicial officer may not be able to recall some or all of the information that had been provided when the warrant was issued. *Id.* at 808; *see also State v. Sims*, 127 Ohio App.3d 603, 613, 713 N.E.2d 513 (2d Dist.1998); *State v. White*, 707 P.2d 271, 276 (Alaska App.1985); *Daitch v. State*, 168 Ga.App. 830, 833, 310 S.E.2d 703 (1983).

{¶ 64} Problems in procedure are apparent as well. A defendant may not be afforded a reasonable opportunity to challenge the validity of a warrant if he is not apprised, prior to the suppression hearing, of the information that allegedly supported the warrant. *See State v. Liesche*, 228 N.W.2d 44, 48 (Iowa 1975) (the failure to record statements deprives a defendant of notice of relevant facts and therefore a meaningful opportunity to attack their veracity). Issuing judges and magistrates would be dragged into the evidentiary process as witnesses, which would waste judicial resources and blur an important line between the judicial process in issuing the warrant and the separate, independent judicial process of reviewing its sufficiency. *See In re Gault*, 387 U.S. 1, 58, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (failure to record proceedings forces the reviewer to reconstruct the record and imposes on the original judge "the unseemly duty of testifying under

cross-examination as to the events that transpired in the hearings before him"); *State v. Lindsey*, 473 N.W.2d 857, 862 (Minn.1991). In sum, allowing courts to consider such unrecorded statements would significantly hinder the courts' ability to reasonably and accurately determine whether the state actually complied with the Constitution before obtaining a search warrant for someone's home.

{¶ 65} The majority of jurisdictions in the United States that allow supplemental testimony for warrant applications have attempted to avoid the foregoing dangers by requiring that such testimony be recorded, transcribed, or officially memorialized in some way. 1 Burkoff at 226, fn. 5 and Appendix 2. Most of those jurisdictions place an affirmative duty on the *issuing* judge, the warrant applicant, or both, to create a record at the time of testimony. For example, the Federal Rules of Criminal Procedure provide that "[t]estimony taken in support of a warrant must be recorded by a court reporter or by a suitable recording device, and the judge must file the transcript or recording with the clerk, along with any affidavit." Fed.R.Crim.P. 41(d)(2)(C). *See also* Ariz.Rev.Stat.Ann. 13-3914 (sworn oral statements "shall be recorded"); N.Y.Crim.Pro. 690.35 (oral testimony must be sworn to and recorded). These rules fail to place any duty on the *reviewing* judge, though, which provides plenty of room for disagreement over the appropriate consequences at a suppression hearing if it turns out that the issuing judge failed to adhere to her duty. Our rule does not lack such explanation.

{¶ 66} Ohio's rule on sworn oral statements is relatively unique in that it goes one step further in the process. Crim.R. 41(C)(2) does not require that a warrant applicant's testimony be recorded in all instances. However, it does make the recording process a prerequisite to the admissibility of the testimony at a suppression hearing:

> Before ruling on a request for a warrant, the judge may require the
> affiant to appear personally, and may examine under oath the affiant

and any witnesses the affiant may produce. Such testimony shall be admissible at a hearing on a motion to suppress if taken down by a court reporter or recording equipment, transcribed, and made part of the affidavit.

Crim.R. 41(C)(2). Our rule therefore places affirmative duties on the suppression judge rather than on the warrant applicant or the issuing judge. In other words, Crim.R. 41(C)(2) put Judge Peeples and Detective Wuertz on notice that their failure to record Detective Wuertz's supplemental testimony would have a definitive outcome in the event that Dibble were to challenge the sufficiency of Detective Wuertz's warrant affidavit at a suppression hearing: the reviewing court would be forbidden from considering the supplemental testimony because it would be inadmissible.

{¶ 67} The unique and specific language of Crim.R. 41(C)(2)'s recording-admissibility requirement is not accidental. It is not merely "nestled," majority opinion at ¶ 30, into the rule like a superfluous piece of ribbon that just happened to be woven into a bird's nest. Its presence in the rule is intentional and it serves a specific and important purpose. When Ohio's Criminal Rules were first adopted in 1973, there was a "disputed issue which [was] clarified by Criminal Rule 41(C)." Katz, *Ohio Rules of Criminal Procedure: A Guide to Criminal Procedure in Ohio Under the New Criminal Rules* 157 (1973). The disputed issue was whether a warrant applicant's supplemental oral testimony to an issuing judge could be considered later at a motion to suppress in order to "validate an otherwise insufficient affidavit." *Id.*, citing *Cleveland Hts. v. Spellman*, 7 Ohio Misc. 149, 213 N.E.2d 206 (M.C.1965) (disallowing oral testimony); *State v. Misch*, 23 Ohio Misc. 47, 260 N.E.2d 841 (C.P.1970) (allowing oral testimony). Requiring that supplemental oral testimony be recorded was "the only way to insure a later review of the finding of probable cause." Katz at 157. Thus, Crim.R. 41(C)(2) resolved

the dispute by allowing consideration of supplemental oral testimony at a suppression hearing if, and only if, that testimony was recorded.

{¶ 68} Given the foregoing, the plain language of Crim.R. 41(C)(2) dictates that unrecorded oral testimony that was given to an issuing judge when a warrant was signed cannot be admitted at a subsequent suppression hearing for any reason. *State v. Shingles*, 46 Ohio App.2d 1, 2, 345 N.E.2d 614 (9th Dist.1974) (in a motion-to-suppress hearing, an unrecorded statement is inadmissible); *see also State v. Graddy*, 55 Ohio St.2d 132, 136, 378 N.E.2d 723 (1978), fn. 2, citing *Shingles*. And given the history and purpose behind Crim.R. 41(C)(2), such testimony absolutely cannot be considered to bolster probable cause at a suppression hearing to remedy a warrant affidavit's failure to establish probable cause.

## B. The good-faith exception to the exclusionary rule

{¶ 69} Despite the clear purpose and scope of Crim.R. 41(C)(2), the state urges that the rule is inapplicable in this case because our focus is not on probable cause but instead is on the narrower issue of the good-faith exception to the exclusionary rule outlined in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 70} In *Leon*, the United States Supreme Court provided a nonexhaustive list of four exceptions to an officer's alleged good-faith reliance on an invalid warrant. It is unreasonable for an officer to rely on a warrant (1) when the warrant affidavit contains knowing or reckless falsehoods, (2) when the issuing judge abandons her neutral role, (3) when the affidavit is so devoid of indicia probable cause that it is unreasonable for any official to believe in its existence, and (4) when the warrant itself is facially deficient regarding the location to be searched or the items to be seized. *Id.* at 922-923. In any of the foregoing circumstances, any reasonably well-trained officer would know that the warrant would not have been constitutionally compliant and therefore the officer could not have reasonably relied on that warrant.

{¶ 71} It is true that "all of the circumstances" may be considered when determining if a competent police officer would reasonably rely on a search warrant. *Id*. at 922, fn. 23. But our inquiry in this case does not involve a general exploration of good faith. It is limited to the third exception stated in *Leon*, which contains a probable-cause review and prohibits the application of the good-faith exception when the warrant affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id*. at 923, quoting *Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part). Unlike the first two exceptions described in *Leon*, which would require a reviewing court to consider evidence outside the four corners of a warrant's affidavit, the third exception evaluates the facial validity of the affidavit.

{¶ 72} The quintessential example of the third exception described in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, is found within *Leon* itself. Although the warrant affidavit in question in *Leon* fell just short of probable cause, it still had "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause." *Id*. at 926. Consequently, the officer's reliance on the warrant was found to have been objectively reasonable. *Id*. Conversely, the good-faith exception does not apply when a warrant is supported by a "bare bones" affidavit that leaves no room for debate that the affidavit completely failed to provide a single indicia of probable cause. *Id*.

{¶ 73} The state's argument does not align with *Leon*'s analysis of the third exception. Pursuant to *Leon*, the state would need to establish that Detective Wuertz's affidavit, despite its failure to fully establish probable cause, provided at least some information—on its face—that could lead reasonable judges to disagree over the existence of probable cause. The state failed to do so, as it was clear from the testimony of Detective Wuertz that neither he nor any reasonable officer or judge could objectively conclude from the face of the affidavit that there was

probable cause to search Dibble's home. Instead, the state sought to amend the face of the affidavit itself by supplementing it with alleged testimony to the issuing judge.

{¶ 74} The state essentially asked the suppression court to consider an allegation of a completely separate crime for purposes of establishing probable cause, approximately akin to illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323. Thus, the state used the good-faith exception as a back door to insert a new, alternative theory of probable cause after the affidavit's utter lack of probable cause was already a foregone conclusion.

{¶ 75} Because the specific good-faith inquiry in this case arises from an affidavit that lacks any indicia of probable cause, it would subvert the purpose of the analysis to allow the state to establish good faith by shoehorning probable cause back into the affidavit. *See United States v. Luong*, 470 F.3d 898, 905 (9th Cir.2006); *State v. Klosterman*, 114 Ohio App.3d 327, 332-333, 683 N.E.2d 100 (2d Dist.1996); *State v. Lee*, 1st Dist. Hamilton No. C-070056, 2008-Ohio-3157, ¶ 26. Accordingly, I do not believe that the evidence promoted by the state is even appropriate for purposes of establishing good-faith reliance on the warrant pursuant to the third exception in *Leon*. Even if the state's evidence were appropriate in this specific good-faith analysis, it remains true that the state is attempting to establish some indicia of probable cause on which a reasonable official could rely, to which the recording-admissibility requirement of Crim.R. 41(C)(2) would apply. Although the level and intensity of a reviewing court's probable-cause inquiry might differ within the good-faith analysis compared to a reviewing court's initial determination that the warrant affidavit lacked probable cause, it is still a probable-cause inquiry. Accordingly, Crim.R. 41(C)(2)'s recording-admissibility rule applied to Dibble's suppression proceedings irrespective of the fact that the trial court was tasked with reviewing the good-faith exception to suppression rather than the initial review of probable cause.

### C. Barring unrecorded testimony serves a deterrent purpose

{¶ 76} The potential inadmissibility of a warrant applicant's unrecorded testimony at a suppression hearing, pursuant to Crim.R. 41(C)(2), is a completely separate inquiry from the ultimate determination that the evidence from an unlawful search should be suppressed. The state and the majority opinion combine the two matters by examining whether the exclusionary rule's emphasis on deterrence prohibits the application of Crim.R. 41(C)(2) at a suppression hearing. Even if the combination of the two inquiries is legitimate, it is clear that the recording-admissibility requirement in Crim.R. 41(C)(2) deters police from improperly enhancing the issuing judge's finding of probable cause after the search has occurred.

{¶ 77} The majority cites to *State v. Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986), to emphasize that any noncompliance with Crim.R. 41(C)(2) should lead to suppression only if the violation of the rule rose to the level of "constitutional magnitude," *id*. at 263. But *Wilmoth* stands for the proposition that a "magistrate's technical failure to use the proper words in administering the oath," *id*. at 266, would not render the otherwise properly recorded and transcribed testimony inadmissible pursuant to Crim.R. 41(C)(2). *Wilmoth* explains that negligible technical or ministerial irregularities related to sworn testimony should be disregarded when they do not impair the suppression court's review of the issuing court's probable-cause determination. *Id.* at 266-267.

{¶ 78} The complete failure to preserve a record of the alleged showing of probable cause is not a mere technical failing. The lack of any record of probable cause is wholly substantive, and the trial court's decision to admit Detective Wuertz's unrecorded testimony constitutes a violation of Crim.R. 41(C)(2) of constitutional magnitude because it fails to safeguard the "interests sought to be protected by the Fourth Amendment and Crim.R. 41." *Wilmoth* at 264. Excluding evidence that has been collected in contravention of Crim.R. 41(C)(2) serves an

important deterrent purpose; it deters officials from violating the Fourth Amendment by denying them the opportunity to cover up such violations at suppression hearings with backdated information in support of probable cause. Accordingly, I believe the Tenth District Court of Appeals correctly determined that Detective Wuertz's alleged supplemental testimony to Judge Peeples was not admissible at the hearing on Dibble's motion to suppress.

{¶ 79} The only information regarding probable cause that was properly before the trial court in the suppression hearing was the affidavit itself. As already stated, Detective Wuertz agreed that the information in his affidavit regarding the crime against E.S. failed to establish probable cause to search Dibble's residence for media materials. Although obscene media involving minors and sexual contact with minors are both criminalized, an allegation of one of those crimes does not automatically provide probable cause to search for evidence of the other. *United States v. Doyle*, 650 F.3d 460, 472 (4th Cir.2011); *United States v. Hodson,* 543 F.3d 286, 292 (6th Cir.2008); *United States v. Falso,* 544 F.3d 110, 124 (2d Cir.2008). Detective Wuertz's affidavit lacked any indicia of probable cause that would allow an official to reasonably believe in its existence, and the state failed to meet its burden of proving that the good-faith exception should apply. The Tenth District properly held that the fruits of the search of Dibble's residence should have been suppressed.

### III. CONCLUSION

{¶ 80} Common sense tells us that a person who has committed crimes of an obscene and depraved nature deserves punishment. But common sense also tells us that the police cannot search for anything they want for any reason they want just because they have a piece of paper in hand that states, "Warrant." In order to ensure that the latter remains true, enforcement of the admissibility rules of Crim.R. 41(C)(2) is appropriate in this case. I would affirm the decision of the Tenth District Court of Appeals.

O'CONNOR, C.J., concurs in the foregoing opinion.

_____

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Assistant Prosecuting Attorney, for appellant.

Carpenter, Lipps & Leland, L.L.P., Kort Gatterdam, and Erik P. Henry, for appellee.

_____